**LUJAN AGUIGUI & PEREZ LLP**
Attorneys at Law
DNA Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for Defendant In Hyuk Kim*



FILED
DISTRICT COURT OF GUAM

DEC 21 2007

JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>MI KYUNG BOSLEY, aka Mi Kyung Park, and IN HYUK KIM, aka Dominic,<br><br>　　　　　Defendants. | CRIMINAL CASE NO. CR07-00064<br><br>**MOTION TO SUPPRESS STATEMENT FOR MIRANDA VIOLATIONS** |

## MOTION TO SUPPRESS STATEMENTS FOR MIRANDA VIOLATIONS

The Fifth Amendment of the United States Constitution provides that "no person be compelled in any criminal case to be a witness against himself." *Miranda v. Arizona*, 384 U.S. 436 (1966) declared that custodial interrogation generates "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he does not otherwise do so freely. " *Id.* at 467. Therefore, the prosecution may not use statements elicited through custodial interrogation unless the use of procedural safeguards guarantee that the accused has been informed of and has freely waived the Constitutional privileges of the Fifth Amendment. *Id.* at 444-45. Under *Miranda* , law enforcement officers must warn a defendant that "he has the right to remain silent, that any statement he does make may be used as evidence against him, and

that he has the right to the presence of an attorney, either retained or appointed," prior to the commencement of any interrogation. *Id.* at 444. Second, if the defendant "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning." *Id.* at 444-45. Further, "if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him." *Id.* at 445. The defendant may waive the exercise of his Miranda rights "provided the waiver is made voluntarily, knowingly, and intelligently." *Id.* at 444. The purpose of the warnings is to guard against self-incrimination during "incommunicado interrogation" of individuals in settings dominated or controlled by law enforcement officers. *Illinois v. Perkins*, 496 U.S. 292, 295 (1990).

In *Dickerson v. U.S.*, the United States Supreme Court revisited the application of the Miranda doctrine, reaffirming that Miranda warnings were "not a preliminary ritual to existing methods of interrogation," but instead referenced "rights grounded in a specific requirement of the United States Constitution." *Dickerson v. U.S.*, 120 S.Ct. 2326, 2334 n.4 (2000).

A court may admit statements elicited after a recitation of Miranda warnings if police officers secured a valid waiver of Miranda rights before they elicited incriminating statements. Under Miranda doctrine, however, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda* 384 U.S. at 475. The relinquishment of the rights must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Also, "the waiver must have been made with a full awareness both of the nature of the right to be abandoned and consequences of the decision to abandon it." *Id.* Reviewing courts must look to the "totality of the circumstances surrounding the interrogation" to answer these inquiries. *Id.*

2
*USA vs. Mi Kyung Bosley, aka Mi Kyung Park and In Hyuk Kim aka Dominic*;
Criminal Case No. CR07-00064
**Motion to Suppress Statement for Miranda Violations**
Case 1:07-cr-00064    Document 29    Filed 12/21/2007    Page 2 of 11

In addition to proving compliance with Miranda and its progeny, the government must establish that the challenged statements were made voluntarily. *See Fulminante*, 499 U.S. at 288. Involuntary statements are inherently untrustworthy, and their use violates our fundamental sense of decency. *See Spano v. New York*, 360 U.S. 315, 320-21 (1959). A statement is involuntary if the will of the defendant "was overborne in such a way as to render his confession a product of coercion," and thus inadmissible under the Fifth Amendment. *Id.*; *see also U.S. v. Bautista-Avila*, 6 F.3d 1360, 1364 (9th Cir. 1993) (declaring that"[a] statement is involuntary if it extracted by any sorts of threats or violence [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence").

Dated this 20th day of December, 2007.

LUJAN AGUIGUI & PEREZ LLP

By: /s/ Peter C. Perez

**PETER C. PEREZ, ESQ.**
*Attorneys for Defendant In Hyuk Kim*

K-0021/878-00/0878/PCP/dmg

3
*USA vs. Mi Kyung Bosley, aka Mi Kyung Park and In Hyuk Kim aka Dominic*;
Criminal Case No. CR07-00064
**Motion to Suppress Statement for Miranda Violations**
Case 1:07-cr-00064   Document 29   Filed 12/21/2007   Page 3 of 11

**LUJAN AGUIGUI & PEREZ LLP**
Attorneys at Law
DNA Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

# IN THE UNITED STATES DISTRICT COURT

# TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>IN HYUK KIM aka DOMINIC,<br><br>Defendant. | CRIMINAL CASE NO. CR07-00064<br><br>**DECLARATION OF IN HYUK KIM aka DOMINIC** |

1. On or about July 31, 2007 at approximately 5:00 a.m. law enforcement officers approached me at the airport parking lot and told me I needed to follow them to their vehicle. I was no advised why.

2. I entered the vehicle in the back seat and was placed between two officers. Two other officers were in the front seats. An officer immediately handcuffed me.

3. While I was seated in the vehicle, and while the vehicle was driving, an officer placed a document on my lap, upside down. The interior of the vehicle was dark. I was not given an opportunity to read the document.

4. Upon information and belief, while in the vehicle, one of the officers orally read me what I believe to have been Miranda rights.

5. While in the vehicle I was not advised why I had been handcuffed or why I was under arrest. I was only told that I should think about what I had done.

6. I was taken to the ICE office at the Maite First Hawaiian Bank building. I continued to be handcuffed. When we arrived at the ICE office, still handcuffed, I was searched.

7. I then tried to read the document that the officer gave me in the car but it was immediately taken away.

8. The officers then promised me that if I cooperated and answered questions, I would be released, as though nothing happended.

9. Based upon the promises given to me by the officers I cooperated and answered their questions.

10. After being orally interviewed and answering the officers' questions, the officers told me to put my statements in writing, and reminded me that if I cooperated, that I would be released and that my arrest would be sealed.

11. Based upon the officers' promises, I signed the Statement of Rights Form which is attached herewith as Exhibit A and prepared the written statement which is attached herewith as Exhibit B.

12. I would not have waived my Miranda rights or made statements but for the officers' promises that I would be released and that my arrest would be kept secret.

I declare under penalty of perjury, that the foregoing is true and correct.

Dated this __20th__ day of December, 2007.

_____
IN HYUK KIM aka DOMINIC

K-0021/878-00/0878/PCP/dmg

2
*USA vs. In Hyuk Kim aka Dominic*; Criminal Case No. CR07-00064
Declaration of In Hyuk Kim aka Dominic
Case 1:07-cr-00064   Document 29   Filed 12/21/2007   Page 5 of 11

# EXHIBIT A



# U.S. Immigration and Customs Enforcement

## STATEMENT OF RIGHTS

Before we ask you any questions, it is my duty to advise you of your rights.

You have the right to remain silent.

Anything you say can be used against you in court, or other proceedings.

You have the right to consult an attorney before making any statement or answering any questions.

You have the right to have an attorney present with you during questioning.

If you cannot afford an attorney, one will be appointed for you before any questioning, if you wish.

If you decide to answer questions now, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting an attorney.

---

## WAIVER

I have had the above statement of my rights read and explained to me and I fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity. I was taken into custody at 5:12 am (time), on July 31, 2007 (date), and have signed this document at 5:30 am (time), on July 31, 2007 (date).

In Hyuk Kim
Print Name

_[signature]_
Signature

WITNESS: _[signature]_ Richard Flores    DATE: 07/31/07

WITNESS: _[signature]_    DATE: 7/31/2007

# EXHIBIT B

# DEPARTMENT OF THE TREASURY
## UNITED STATES CUSTOMS SERVICE

# AFFIDAVIT

STATE OF: _____ )

COUNTY OF: _____ )

I, In Hyuk Dominic Kim

Who after being duly sworn states the following:

I first started sending I-94 that was given to me by Suh/Wonbae. This happened back in 2003. I had recieved from him was $400 and to drink at the Club he owned Club Volvo. I do not recall how many I sent out, but it was around 10. Suh/wonbae informed other owner such as Yuji and Aena who owned Big mama. I probably sent around 4 I-94 per their request and recieved $300 per person. I then met Ms. Noh who was close with Aena of Big Mama. Ms Noh later worked at Yeobo Club where I sent 5 I-94 as she requested and recieved $300 per person. I recieved I-94 from YiJae as request by Ms. Noh. I am thinking I recieved around 4 in early 2006 and 5 additional late 2006. I was told 4 was for the request of Park/KwangHo and was paid $1200 for all 4 people and didn't get the other 400 as promised. My last I-94 I sent was early 2007 or late

The contents of this statement are true and correct to the best of my knowledge and belief.

Subscribed and sworn to before me this 31 day of July, in the year 2007

_____ Affiant

_____ Special Agent

_____ Witness

Customs Form 4604 (062697)

## AFFIDAVIT (continuation)

2006. After the first two or three years of send I-94 illegally, I heard rumors of investigation. I stopped sending I-94 but still recieved money to send the I-94. I just threw the I-94 away and made it seem the I-94 was sent. Because I work at the airport, people will call me to get information about someone being in secondary or if some came to Guam. In no way did I know that some one was coming unless they were not released by CBP and the manager or owners will call me about a certain passenger. In no way did I falsify in the interpretation conducted. I may know or assume their intent was for working but I am there to interpret the best I can. I recieved phone calls from Mr. Choi Byoungkuk asking me about Mr. Kim/Douglas. I asked him how he knew Mr. Douglas Kim and how he is associated with him. All he told me was that someone else was asking. I told him he was held by customs I met Mr. Choi/Byoung Kuk when he came to Guam for his honey moon. I was asked by Mr.Kim/ Yong Sik to drive them around. It was Mr. Yong Sik through Yuji of Big MaMa to drive and guide Mr. Sa Yong Kim when he came to Guam for his Honey Moon, In no way was I connected with drugs being brought in to Guam

The contents of this statement are true and correct to the best of my knowledge and belief.

Subscribed and sworn to before me this **31** day of **July**, in the year **2007**.

_____ Special Agent

_____ Affiant

_____ Witness

Page **2** of **3**

Customs Form 4604C (062697)

# AFFIDAVIT (continuation)

I. had dropped It Met Mr. Kim/YongSik before he left guam. I had picked him up at M&M spa and went to Yong Sanna Club before I dropped him at the airport. He showed me his green card and also informed me that I wouldn't be able to reach him until he takes care of some business with police. He said he would be arrested as soon as he arrives in Korea. This was the last I heard from him. It was later that I was told that he was involved in smuggling drugs. I only found out through Mr. Kim/Sa Yong because he was asking to find out what had happen to Mr. Kim/Doo Hwan. Mr. Sa Yong told me that Mr. Doo Hwan was involved in smuggling drugs this was a month after the drug smuggling Incident. I had to go to the consulate and find out his where abouts. The only money I recieved from Mr. Sa Yong Kim was not for me but to buy books for Mr. Dohwan Kim. I had dropped off books at agana Precint.

The contents of this statement are true and correct to the best of my knowledge and belief.

Subscribed and sworn to before met this 31 day of July, in the year 2007

Special Agent

Affiant

Witness

Page 3 of 3

Customs Form 4604C (062897)