**LUJAN AGUIGUI & PEREZ LLP**
Attorneys at Law
DNA Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for Defendant In Hyuk Kim aka Dominic*



FILED
DISTRICT COURT OF GUAM

APR 1 8 2008

JEANNE G. QUINATA
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT

## TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. CR07-00064 |
| vs. | **MOTION TO DISMISS SUPERSEDING INDICTMENT FOR PROSECUTORIAL VINDICTIVENESS** |
| IN HYUK KIM aka DOMINIC, | |
| Defendant. | |

## <u>INTRODUCTION</u>

Defendant, through counsel, LUJAN AGUIGUI & PEREZ LLP, moves to dismiss with prejudice the Superseding Indictment filed against him on March 12, 2008 on the ground of prosecutorial vindictiveness. The Superseding Indictment containing more extensive conspiracy to commit alien smuggling charges and three (3) new counts of alien smuggling was filed only after Defendant Kim exercised his procedural, constitutional, and statutory rights to reject the Government's plea offer, plead not guilty, and to file motions to suppress, dismiss and exclude. The Government could have prosecuted Kim for the charges in the Superseding Indictment well before he asserted his rights, had the evidence and information to do so, but filed the Superseding Indictment only after Kim exercised his legal rights by rejecting the plea offer and filing and arguing motions. Had Kim accepted the plea offer, the Government would not have filed a

Superseding Indictment. Had Kim not filed and argued motions asserting his constitutional, procedural and statutory rights, the Government would not have filed the Superseding Indictment. The Superseding Indictment is the product of prosecutorial vindictiveness and should be dismissed with prejudice.

## FACTS

The Government had the evidence and information it would have needed to file the charges contained in the Superseding Indictment as early as January 23, 2006 when it received information and investigated Yeju An's claims that Mi Kyung Bosley and Kim were falsifying the departures of Korean non-immigrant females who entered Guam under the Guam Visa Waiver program. See Report of Investigation, An's Statement Regarding I-94 Scam and Employment of Korean Females, attached herewith as **Exhibit A**. This Report, along with other information and evidence collected by the Government from January 2006, or earlier, through July 31, 2007, is the basis of the Superseding Indictment charges.

On July 25, 2007 the Government obtained an Indictment against Kim which charged Kim and co-Defendant Mi Kyung Bosley with Conspiracy to Commit Alien Smuggling in violation of 18 U.S.C. §§ 2 and 371. The Indictment alleged, *inter alia*:

> On or between November 2, 2006, and January 30, 2007, within the District of Guam and elsewhere, the Defendants herein, MI KYUNG BOSLEY and IN HYUK KIM, did unlawfully, willfully, and knowingly combine, conspire, confederate and agree with each other and with other persons both known and unknown to the Grand Jury, to commit an offense against the United States, to wit: alien smuggling for commercial advantage and financial gain, in violation of Title 8, U.S.C. 1324(a)(1)(A)(iii), and did commit overt acts in furtherance of said conspiracy and to achieve the object thereof...

The Indictment then alleged six (6) paragraphs of overt acts involving the following aliens:

(a) Su Jeong Choi; (b) Ji Young An; (c) Jang Mi Byeon; and, (d) Mi Sun Im.

---

2

*USA vs. In Hyuk Kim aka Dominic*; CR07-00064
**Motion to Dismiss Superseding Indictment for Prosecutorial Vindictiveness**
Case 1:07-cr-00064    Document 70    Filed 04/18/2008    Page 2 of 43

On August 9, 2007 the Government transmitted a Plea Agreement to Kim. The Government's cover letter and the Plea Agreement are attached herewith as **Exhibits B.1 and B.2**. Rather than accept the Government's plea offer, Kim instead exercised his right to plead not guilty to the Indictment and if necessary, to proceed to trial.

On December 21, 2007, Kim exercised his Constitutional and procedural rights by filing the following motions: (a) Motion to Dismiss Indictment for Failure to State an Offense; (b) In Limine Motion to Exclude 404(b) Evidence; (c) Motion to Suppress for Miranda Violations; (d) Motion to Suppress Co-Defendant's Statements.

The Government filed United States' Response to Defendant's Motions on December 28, 2007. The Government attached to its Response the following Exhibits:

1. Transcript of 11/02/06 call to Bosley;

2. Transcript of 11/06/06 call to Bosley;

3. Transcript of 11/06/06 meeting at Kings with Bosley;

4. Transcript of 11/18/06 meeting at Kings with Bosley;

5. Transcript of 1/16/08 meeting at Kings with Kim;

6. Transcript of 2/07/08 call to Bosley;

7. Transcript of 2/07/08 call to Kim;

8. Statement of Rights Form allegedly executed by Kim on 7/31/07;

9. Affidavit allegedly written by Kim on 7/31/07; and,

10. Report of Investigation concerning statements allegedly made by Kim on 7/31/07.

These exhibits are attached herewith as **Exhibits C.1-C.10**. The Government's exhibits, along with the other Reports referenced herein establish that the Government had more than enough

3

*USA vs. In Hyuk Kim aka Dominic*; CR07-00064
Motion to Dismiss Superseding Indictment for Prosecutorial Vindictiveness
Case 1:07-cr-00064    Document 70    Filed 04/18/2008    Page 3 of 43

evidence to proceed with the charges contained in the Superseding Indictment well before Kim asserted his legal rights.

Hearings on Kim's motions were held beginning February 11, 2008. At the motions hearings the Government presented Exhibits 1-10 and the testimony of Agents John Duenas and Richard Flores. During the motions hearings arguments the Government advised the Court that a Superseding Indictment was "imminent." The Government subsequently stated, "I hope it is imminent."

On March 12, 2008 the Government filed a Superseding Indictment against Kim and Bosley charging them with Conspiracy to Commit Alien Smuggling in violation of 8 U.S.C. §§ 2 and 371 and Alien Smuggling in violation of 8 U.S.C. §§1324(a)(1)(A)(iii) and (a)(1)(B)(i). Count I paragraphs 13-18 are identical to the original Indictment charge, paragraphs 1-6. Count 1 paragraphs 1-12, Count II, Count III, and Count IV are based upon evidence and information the Government possessed well before Kim asserted his constitutional, procedural and statutory rights. Kim now moves to dismiss with prejudice the Superseding Indictment on the ground of prosecutorial vindictiveness.

## ARGUMENT

The Superseding Indictment filed against Kim after the exercise of his statutory, procedural and constitutional rights, is the product of prosecutorial vindictiveness and should be dismissed with prejudice. The Government violates a Defendant's right to due process of law if it files alien smuggling charges to penalize him for exercising a protected statutory or constitutional right. *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). A Defendant may establish prosecutorial vindictiveness by producing direct evidence of the prosecutor's punitive motivation towards him. *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th

4

*USA vs. In Hyuk Kim aka Dominic*; CR07-00064
Motion to Dismiss Superseding Indictment for Prosecutorial Vindictiveness
Case 1:07-cr-00064    Document 70    Filed 04/18/2008    Page 4 of 43

Cir.1982). Alternatively, a Defendant is entitled to a presumption of vindictiveness if he can show that the alien smuggling charges "were filed because [he] exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *Id.* In the instant case, the Government filed the additional alien smuggling charges because Kim exercised his legal rights by rejecting the plea offer, maintaining his not guilty plea, and filing and arguing motions, asserting constitutional, procedural, and statutory rights. Had he not asserted his legal rights, the Government would not have filed a Superseding Indictment.

To establish a presumption of vindictiveness, a Defendant need not show "that the prosecutor acted in bad faith" or that she "maliciously sought" the alien smuggling indictment. *United States v. Groves*, 571 F.2d 450, 453 (9th Cir.1978). Rather, he must demonstrate a *reasonable likelihood* that the government would not have brought the alien smuggling charges had he not elected to exercise a statutory, procedural or constitutional right. *Gallegos-Curiel* 681 F.2d at 1169. That is what occurred here when the Government filed the additional alien smuggling charges in response to Kim's assertion of his legal rights.

The mere appearance of prosecutorial vindictiveness suffices to place the burden on the government because the doctrine of vindictive prosecution "seek[s] to reduce or eliminate apprehension on the part of an accused" that he may be punished for exercising his rights. *United States v. Ruesga-Martinez*, 534 F.2d 1367, 1369 (9th Cir.1976). The "prophylactic" doctrine is designed, in part, "to prevent chilling the exercise of [legal] rights by other defendants who must make their choices under similar circumstances in the future." *United States v. DeMarco*, 550 F.2d 1224, 1227 (9th Cir.1977).

The presumption of vindictiveness raised by the prosecutor's decision to file alien smuggling charges after a Defendant's exercise of a protected right must be overcome by

*USA vs. In Hyuk Kim aka Dominic*; CR07-00064
**Motion to Dismiss Superseding Indictment for Prosecutorial Vindictiveness**
Case 1:07-cr-00064    Document 70    Filed 04/18/2008    Page 5 of 43

"objective evidence justifying the prosecutor's action." *Goodwin*, 457 U.S. at 376 n. 8, 102 S.Ct. 2485. The prosecution must show that the additional charges "did not stem from a vindictive motive, or [were] justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness." *Gallegos-Curiel*, 681 F.2d at 1168. In the instant case, the Government cannot.

In a case directly on point in both fact and law to the instant case, the Ninth Circuit affirmed the district court's dismissal of an indictment on the ground of prosecutorial vindictiveness. In *United States v. Jenkins*, 504 F.3d 694 (9th Cir.2007), Jenkins was apprehended twice for attempting to cross the U.S.-Mexico border while driving a vehicle containing undocumented aliens. Both times, Jenkins stated that she had been paid to drive the car across the border. She was not charged with any crime. Almost three months later, Jenkins was apprehended while attempting to cross the border as a passenger in a vehicle containing marijuana. She stated that she had been paid to drive the car, which she believed contained illegal aliens, across the border. Jenkins was charged with importation of marijuana. At trial, she testified in her own defense and maintained that she believed the vehicle in which she had been a passenger contained illegal aliens because she had been paid on two previous occasions to smuggle aliens. While the jury was deliberating, the government filed alien smuggling charges against Jenkins in connection with her first two border apprehensions. The district court found that the prosecutor's conduct created the appearance of vindictive prosecution because the alien smuggling charges were brought only after Jenkins exercised her right to testify in her own defense at her separate marijuana smuggling trial. The Ninth Circuit affirmed finding that, because the government could have prosecuted Jenkins for illegal alien smuggling well before she presented her theory of

*USA vs. In Hyuk Kim aka Dominic*; CR07-00064
**Motion to Dismiss Superseding Indictment for Prosecutorial Vindictiveness**
Case 1:07-cr-00064    Document 70    Filed 04/18/2008    Page 6 of 43

defense at the marijuana smuggling trial, the timing of the charges created the appearance of vindictiveness.

The Court found that the government had more than enough evidence to proceed with the alien smuggling charges prior to Jenkins's decision to testify. The government's evidence prior to Jenkins's in-court confession included: (1) her October 19 admission that she had been paid to smuggle aliens, (2) her October 20 admission that she had been paid to smuggle aliens and that she had been aware of the illegality of alien smuggling, and, (3) her January 9 admission that she had smuggled aliens on October 19 and 20 and had been apprehended. The Court noted, "[i]ndeed, the government admitted that prior to Jenkins's testimony 'it had enough to go forward...and that it could have brought charges earlier on...'" *Jenkins*, 504 F.3d at 700. The Ninth Circuit concluded that the government's conduct under these facts created the appearance of vindictiveness.

In the instant case, like *Jenkins*, the government had more than enough evidence to proceed with the Superseding Indictment's additional and expanded charges prior to Kim's rejection of the plea offer and filing and arguing of motions. Based upon the evidence and information collected and obtained by the Government from at least January 2006 through July 2007, the government indeed had enough to go forward on the charges contained in the Superseding Indictment and could have brought the charges earlier but instead only did so after Kim rejected the plea offer and asserted his procedural, constitutional and statutory rights. The Superseding Indictment is the product of prosecutorial vindictiveness and should be dismissed with prejudice.

/

/

/

/

7

*USA vs. In Hyuk Kim aka Dominic*; CR07-00064
Motion to Dismiss Superseding Indictment for Prosecutorial Vindictiveness
Case 1:07-cr-00064    Document 70    Filed 04/18/2008    Page 7 of 43

# CONCLUSION

The Superseding Indictment is the product of prosecutorial vindictiveness and should be dismissed with prejudice.

Dated this 18th day of April, 2008.

LUJAN AGUIGUI & PEREZ LLP

By: _____

PETER C. PEREZ, ESQ.
*Attorneys for Defendant In Hyuk Kim aka Dominic*

K-0021/878-00/0878/PCP/dmg

8

*USA vs. In Hyuk Kim aka Dominic*; CR07-00064
**Motion to Dismiss Superseding Indictment for Prosecutorial Vindictiveness**
Case 1:07-cr-00064    Document 70    Filed 04/18/2008    Page 8 of 43

# EXHIBIT A

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N | PAGE    1 |
| | CASE NUMBER GM16CR06GM0005 |

TITLE: IN HYUK KIM

CASE STATUS:    INIT RPT

| REPORT DATE 042006 | DATE ASSIGNED 022106 | PROGRAM CODE 6H0 | REPORT NO. 001 |
|---|---|---|---|

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
SOURCE DEBRIEF INFORMAT/   INVESTIGATIVE FINDINGS

TOPIC: AN'S STATEMENT REGARDING I-94 SCAM AND EMPLOYMENT OF KOREAN FEMALES

SYNOPSIS:

AN Ye-Ju claims that her former employer, Mi Kyung BOSLEY, owner of Apple Lounge, and KIM In-Hyuk, Korean Airlines ticket agent, are falsifying the departures of Korean nonimmigrant females who entered Guam under the Guam Visa Waiver (GVW) program. AN alleged that KIM could make it appear that the Korean nonimmigrant females left Guam by placing their I-94's with the I-94's collected from passengers that departed Guam and submitting the I-94's to Customs and Border Protection. AN stated that KIM, without her permission, removed the I-94 from her passport to falsify her departure from Guam and BOSLEY used $300.00 from AN's wages to pay KIM.

This report documents a report from an anonymous source regarding the Apple Lounge and human trafficking of Korean Females and AN's statement to ICE agents regarding BOSLEY and KIM.

| DISTRIBUTION: RACGM SACHL CAKO | SIGNATURE: CONWAY        TIMOTHY        SENIOR SPEC AGENT |
|---|---|
| | APPROVED: ROBERTSON      ROBERT     D   RAC-RESIDENT AGENT IN |
| | ORIGIN OFFICE: GM GUAM - RAC | TELEPHONE: 671 472 7484 |
| | | TYPIST: CONWAY |

O F F I C I A L   U S E   O N L Y

HIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
F THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
ISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
O ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DEFENDANT'S EXHIBIT

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE     2 |
|---|---|
| | CASE NUMBER GM16CR06GM0005 |
| R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | |
| | REPORT NUMBER: 001 |

DETAILS OF INVESTIGATION

1.  On 1/23/2006, an anonymous male source informed TFA Erwin Fejeran of the following:

A. AN Ye-Ju, a Korean female the source is acquainted with, was supposed to come to Guam to attend school. When AN arrived in Guam, she was forced to work at the Apple Lounge, a karaoke bar located in Harmon across from Green Supermarket, as a hostess.

B. AN's passport was taken away from her by Mi Kyung BOSLEY, the owner of Apple Lounge.

C. AN hasn't been paid by BOSLEY for her work at the bar.

D. Mi Kyung BOSLEY is trying to fix AN's status by having someone take the I-94 and make it appear that AN departed Guam.

E. Mi Kyung BOSLEY married Eric BOSLEY, who is in the U.S. Air Force, and the marriage may have been arranged. They are divorced and Eric BOSLEY may be stationed in South Korea.

G. AN moved away from the apartment that is rented by Apple Lounge and the anonymous source will try to find AN and bring her to TFA Fejeran so AN can be interviewed.

2.  On 2/2/2006, AN was arrested by the Guam Police Department (GPD) at the Ritz Lounge when GPD received a disturbance complaint. GPD determined that AN was a GT overstay and she was transported to the Customs and Border Protection (CBP) at the Guam International Airport. CBP confirmed that AN was an overstay and she was turned over to ICE-OI for immigration processing.

3.  On 2/3/2006, AN informed TFA Fejeran and S/A Conway of the following:

A. AN wanted to go to school in Guam to study English but she needed a room so AN's friend, Hee Joung JANG, arranged for her to work at a bar during the night. JANG told AN that Mi Kyung BOSLEY, the owner of a bar on Guam, would provide a room for them but she would have to work at the bar during the night.

B. Mi Kyung BOSLEY paid for AN's ticket to Guam but AN was supposed to pay back half of the airline ticket to Mi Kyung BOSLEY with her future earnings. The money for the airline ticket was wired to JANG's bank account in Korea by Hee Dong KANG.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    3 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N C O N T I N U A T I O N | CASE NUMBER GM16CR06GM0005 |
| | REPORT NUMBER: 001 |

C. AN was going to work at a new bar which was scheduled to open on 11/9/2005. AN and JANG arrived on Guam from Korea on 11/8/2005, and they were met outside of Customs and Quarantine by Chris TYDINGCO, a local married to JANG's sister (Hae Joung JANG). TYDINGCO drove AN and JANG to Denny's Restaurant in Tamuning where they met Mi Kyung BOSLEY. TYDINGCO stayed a few minutes at Denny's and then departed.

D. At Denny's, Mi Kyung BOSLEY told JANG and AN that she would give them more details about the bar after it opens. Mi Kyung BOSLEY also said that AN's airline ticket from Korea cost her $700.00 and that AN will have to pay her $350.00. Mi Kyung BOSLEY also stated that whatever AN earns at the bar will be split 50/50.

E. After coffee, Mi Kyung BOSLEY, AN and JANG met HAN Kichul, who is BOSLEY's boyfriend. HAN Kichul is a Korean male, about 35 years old and an illegal alien. HAN Kichul drove BOSLEY, AN and JANG to the Benson's Apartment #A10, located in Oka Tamuning. The telephone number at apartment A10 may be 647-2880.

F. Apartment A10 is a 2 bedroom apartment owned by Mi Kyung BOSLEY. AN stayed in one room and JANG stayed in the other one.

G. Mi Kyung BOSLEY left the apartment and HAN Kichul took AN and JANG to a restaurant to eat.

H. On 11/9/2005, Apple Lounge had its grand opening and AN, JANG and 4 other Korean girls worked that night.

I. AN worked every night from 1730 until the last customer left and she did this until she left Guam on 11/22/2005. AN earned about $1,300.00 but she had to pay Mi Kyung BOSLEY $350.00 for the airline ticket.

J. HAN Kichul usually drove AN, JANG and one other Korean female both to and from apartment A10 and the Apple Lounge. HAN Kichul drives a 4 door, black Nissan, unknown license number.

K. On 12/2/2005, AN returned by herself to Guam from Korea. An unknown male wired AN $300.00 but the money came from Mi Kyung BOSLEY. When AN arrived on Guam, a Korean taxi driver was waiting for her at the airport and she was driven to Apple Lounge. The taxi driver left after dropping AN off at the lounge.

L. AN began working at Apple Lounge on 12/3/2005.

M. JANG never left Guam and AN heard that for $300.00, a Korean Airlines

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DEPARTMENT OF HOMELAND SECURITY
ICE

REPORT OF INVESTIGATION
CONTINUATION

PAGE    4

CASE NUMBER GM16CR06GM0005

REPORT NUMBER: 001

employee, later identified as KIM Inhyuk, took JANG'S I-94 and put it in the Korean Airline's computer to make it appear that JANG left Guam.

N. On 12/16/2005, AN was to depart Guam for Korea but Mi Kyung BOSLEY took AN's passport. While at the Apple Lounge, Mi Kyung BOSLEY gave AN's passport to KIM In-Hyuk. AN did not pay anything to KIM In-Hyuk because Mi Kyung BOSLEY had AN's money.

O. KIM In-Hyuk took AN's airline ticket and passport and about 3 weeks later AN got her passport back from John SAN AGUSTIN, who is a customer at Apple Lounge.

P. SAN AGUSTIN liked AN and said that if she married him she would not have to leave Guam.

Q. AN left the Apple Lounge after Christmas and SAN AGUSTIN took her to his residence in Sinajana. SAN AGUSTIN later took AN to a motel (unknown name) where she stayed for 2 days. AN later stayed with her boyfriend Pok Sik Yi JANZEN.

R. On 2/2/2006, Mi Kyung BOSLEY found out that AN was visiting with a friend at the Ritz Bar. Mi Kyung BOSLEY went to the Ritz Bar with some friends and an argument ensued. Mi Kyung BOSLEY called GPD and she told the police that AN was an illegal alien. A Korean speaking GPD officer told AN that she was being arrested because she was an illegal alien. Mi Kyung BOSLEY appeared to know the police officers who arrested her because she was joking and laughing with them. AN recognized one of the Chamorro police officers that came to the Ritz Bar as a customer of the Apple Lounge.

S. HAN Kichul works at the game room located in the basement of the MGM Spa in Tamuning. The game room is owned by Jimmy (LNU). HAN Kichul is currently residing at Mai'ana Hotel #320 and his cell number is 687-8285. BOSLEY resides with HAN Kichul and her cell number is 688-0907.

T. AN heard that HAN Kichul and several other Korean males are involved in importing and distributing illegal drugs on Guam and they would meet at Club Kitanozaka, the Volvo Club or the Apple Lounge. AN provided the following names:

A. PARK Kang Ho - owner of a mah jong game room (Royal Horse) located between the PIC and Holiday Store in Tumon

B. KIM Yong Sik (688-1028) - Boyfriend of Hee Joung JANG (687-0880)

C. SANG Sam Joung (688-5442) - Associate of PARK and KIM, runs the Brown

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | PAGE     5 |
| --- | --- |
| | CASE NUMBER GM16CR06GM0005 |
| | REPORT NUMBER: 001 |

Derby

5.    Mi Kyung BOSLEY aka Mi Kyung PARK was born in Korea on 8/7/1976 and is a permanent resident (A76 208 172) based on a marriage to U.S. citizen Eric BOSLEY.

6.    KIM Inhyuk was born in Korea on 2/1/1982 and is a naturalized U.S. citizen (A37877014). According the Superior Court Criminal Justice Information System, KIM's SS# is 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 and he resides at 107 San Roke in Barrigada.

7.    Chris TYDINGCO aka Lawrence C. TYDINGCO with DOB 8/27/1974, is a Nissan Consultant and resides at 147 E. Espiritu Street.

Investigation continues.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

)61407                    TECS II - LIST OF RELATED RECORDS          PAGE
                         4 RECORDS ARE RELATED TO BASE RECORD
GM16CR06GM0005001    ROI  CGM CONWAY            T 042006


P4932610000CGM        AN          YE JU        A F 110979
        SA  SUSPECT, ALIEN                              SUB-SOURCE

P9G74953200CGM        BOSLEY       MI KYUNG    A F 080776
        SC  SUBJECT OF CURRENT INVESTIGATION            SUB-SOURCE

P9G74992300CGM        KIM          INHYUK      A M 020182
        SC  SUBJECT OF CURRENT INVESTIGATION            SUB-SOURCE

GM16CR06GM0005    CASE CGM DUENAS         J 022106
        IN HYUK KIM


OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

`

# EXHIBIT B.1

**U.S. Department of Justice**

*United States Attorney*
*District of Guam*

*Sirena Plaza, Suite 500*        (671) 472-7332
*108 Hernan Cortez Avenue*   FAX: (671) 472-7334
*Hagatna, Guam 96910*

August 9, 2007

John Gorman
Federal Public Defender
Suite 501, FHB Bldg.
400 Route 8
Maite, Guam 96910

　　　　Re: <u>United States v. In Hyuk Kim</u>, Cr. No. 07-00064

Dear John,

　　　　I am enclosing the discovery on this case, and a plea offer. I understand that the
*Marianas Variety* published the fact of his arrest the next day, so I don't know what he could do
for us.

　　　　　　　　　　　Sincerely,

　　　　　　　　　　　LEONARDO M. RAPADAS
　　　　　　　　　　　United States Attorney
　　　　　　　　　　　Districts of Guam and NMI


　　　　　　　　　　　KARON V. JOHNSON
　　　　　　　　　　　Assistant United States Attorney

# EXHIBIT B.2

ORIGINAL

1   kim.ple

2   LEONARDO M. RAPADAS
    United States Attorney
3   KARON V. JOHNSON
    Assistant U.S. Attorney
4   Suite 500, Sirena Plaza
    108 Hernan Cortez Avenue
5   Hagatna, Guam 96910
    Telephone: (671) 472-7332
6   Telecopier: (671) 472-7334

7   Attorneys for the United States of America

8

9            IN THE UNITED STATES DISTRICT COURT

10              FOR THE TERRITORY OF GUAM

11

12  UNITED STATES OF AMERICA,           )    CRIMINAL CASE NO. 07-00064
                                        )
13           Plaintiff,                 )
                                        )
14           vs.                        )    **PLEA AGREEMENT**
                                        )
15  IN HYUK KIM, aka Dominic,           )
                                        )
16           Defendant.                 )
                                        )
17  ──────────────────────────────────

18          Pursuant to Rule 11(c)(1)(B), the United States and the defendant, IN HYUK KIM, enter

19  into the following plea agreement:

20          1. The defendant agrees to plead guilty to an Indictment charging him with Conspiracy to

21  Commit Alien Smuggling for Financial Gain, in violation of Title 18, United States Code,

22  Section 371 and Title 8, United States Code, Section 1324(a)(1)(A)(iii).

23          2(a) The defendant, IN HYUK KIM, further agrees to fully and truthfully cooperate with

24  Federal law enforcement agents concerning their investigation of alien smuggling, money

25  laundering and other related offenses. Cooperation shall include providing all information

26  known to defendant regarding any criminal activity, including but not limited to the offense to

27

28                                       -1-

1  which he is pleading guilty. Cooperation will also include complying with all reasonable
2  instructions from the United States; submitting to interviews by investigators and attorneys at
3  such reasonable times and places to be determined by counsel for the United States; producing to
4  the United States all non-privileged documents (including claimed personal documents) and
5  other materials in the possession, custody or control of defendant requested by attorneys and
6  agents of the United States; and testifying fully and truthfully before any grand juries, hearings,
7  trials or any other proceedings where defendant's testimony is deemed by the United States to be
8  relevant. Defendant understands that such cooperation shall be provided to any state, territorial,
9  local or federal law enforcement agencies designated by counsel for the United States. Further, it
10  is understood and agreed that defendant shall not directly, indirectly, or intentionally disclose
11  anything defendant knows or had done concerning the United States' investigation to anyone
12  other than defendant's attorney. Defendant agrees to take no steps directly or indirectly to warn
13  any subject of this investigation that defendant, a subject or anyone else is being investigated.

14        (b) The United States will make this cooperation known to the Court prior to the
15  defendant's sentencing. The defendant further understands that he remains liable and subject to
16  prosecution for any criminal schemes of which he does not fully advise the United States, or for
17  any material omissions in this regard.

18        (c) This agreement is not contingent in any way upon the outcome of any investigation,
19  proceeding or subsequent trial. Thus, none of the rights and obligations described above are in
20  any way dependent upon a grand jury returning an indictment, a jury's verdict at any trial, or the
21  success of any prosecution.

22        (d) Except as otherwise herein provided, and in particular in Paragraph 11, the United
23  States agrees not to prosecute defendant for any other non-violent offenses which were
24  committed in the District of Guam or the Northern Mariana Islands (CNMI) which defendant
25  reveals to Federal authorities during his cooperation with the United States. This agreement is
26  limited to crimes committed by defendant in the districts of Guam or the CNMI..

27

28                                                                    -2-

(e) The defendant understands, however, that the government reserves the right to present the full scope of his criminal conduct to the sentencing court, and that it may be considered in determining his sentence, as provided by Guidelines § 1B1.3.

3. The defendant, IN HYUK KIM, further agrees to submit to a polygraph examination by any qualified Federal polygraph examiner. The defendant understands that such polygraph examinations may include, but will not be limited to, his knowledge of or involvement in alien smuggling and money laundering activities and his knowledge of other person's involvement in such activities. Defendant understands that the government will rely on the polygraph in assessing whether he has been fully truthful.

4(a) The defendant, IN HYUK KIM, understands that the <u>maximum</u> sentence for Conspiracy to Commit Alien Smuggling for Financial Gain, in violation of Title 18, U.S.C. § 371 and Title 8, U.S.C. §§ 1324(a)(1)(A)(iii) and(A)(v)(I), is ten (10) years incarceration, a $250,000 fine, and a $100 special assessment fee, which must be paid at the time of sentencing. This sentence may include a term of not more than three years supervised release. Defendant understands that if he violates a condition of supervised release at any time prior to the expiration of such term, the court may revoke the term of supervised release and sentence him up to an additional two (2) years of incarceration, pursuant to 18 U.S.C. § 3583(e)(3).

(b) If defendant cooperates as set forth in Paragraphs 2 and 3, the government will recommend that defendant receive the minimum term of incarceration recommended by the Sentencing Guidelines.

(c) If the United States believes the defendant has provided "substantial assistance" as defined by Sentencing Guidelines 5K1.1, the United States will request the court to depart below the statutory minimum pursuant to Title 18, United States Code, § 3553(e), and may, as provided by Sentencing Guidelines 5K1.1, request the court to depart below the applicable guidelines range when fixing a sentence for defendant or may, within one year after sentencing herein, move the court to order relief pursuant to Rule 35, Rules of Criminal Procedure to whatever guidelines

-3-

1  range or sentence of incarceration the United States in its sole discretion deems appropriate.

2  Defendant acknowledges that the United States has made no promise, implied or otherwise, that

3  defendant will be granted a "departure" for "substantial assistance." Defendant further

4  acknowledges that no promise of any kind has been made that a motion requesting such

5  departure will be made except as otherwise provided herein.

6  (d) The United States agrees to consider the totality of the circumstances, including but

7  not limited to the following factors, in determining whether, in the assessment of the U. S.

8  Attorney, defendant has provided substantial assistance which would merit a government request

9  for a downward departure from the mandatory statutory minimum or the applicable Guidelines

10  sentencing range:

11  (1) the United States' evaluation of the significance and usefulness of any assistance rendered by defendant;

12

13  (2) the truthfulness, completeness, and reliability of any information or testimony provided by defendant;

14  (3) the nature and extent of defendant's assistance;

15  (4) any injuries suffered or any danger or risk of injury to defendant or defendant's family resulting from any assistance provided by defendant; and

16

17  (5) the timeliness of any assistance provided by defendant.

It is understood that even if a motion for departure is made by the United States, based

18
upon defendant's perceived substantial assistance, the final decision as to how much, if any,
19
reduction in sentence is warranted because of that assistance, rests solely with the District Court.
20

21  (e) The government will recommend a fine within the Sentencing Guidelines range. If

defendant is financially unable to immediately pay the fine in full, defendant agrees to make a
22

23  full disclosure of his financial status to the United States Attorney's Office by completing a

Financial Disclosure Form (OBD-500) for purpose of fixing a monthly payment schedule.
24

25  Defendant understands that, by law, interest accrues on any remaining balance of the debt.

6(a) The defendant understands that to establish a violation of Conspiracy to Commit
26
Alien Smuggling for Financial Gain pursuant to Title 18, United States Code, Section 371, and
27

28  -4-

Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (v)(I), the government must prove the following elements beyond a reasonable doubt:

> First: beginning on or about the dates charged in the indictment, there was an agreement between two or more persons to commit the crime of alien smuggling as charged in the indictment;

> Second: the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

> Third: one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with the jury all agreeing on the particular overt act committed.

6(b) The defendant understands that to establish a violation of Alien Smuggling for commercial gain, pursuant to Title 8, United States Code, Section 1324(a)(1)(A)(iii), the government must prove the following elements beyond a reasonable doubt:

> First: the defendant concealed, harbored, or shielded from detection a person who was in the United States;

> Second: the defendant knew the person was an alien;

> Third: the defendant knew or was in reckless disregard of the fact that the alien had come to, entered or remained in the United States in violation of law;

> Fourth: the defendant committed this offense for the purpose of commercial advantage or private financial gain.

7. The defendant agrees that the Sentencing Guidelines apply to this offense. The defendant also understands that the facts he stipulates to herein will be used, pursuant to 1B1.2, in calculating the applicable guidelines level. The Government and the defendant stipulate to the following facts for purposes of the Sentencing Guidelines:

(a) The defendant was born in 1982, and is a citizen of the United States.

(b) If the defendant cooperates with the United States by providing information concerning the unlawful activities of others, the government agrees that any self-incriminating information so provided will not be used against defendant in assessing his punishment, and therefore, pursuant to § 1B1.3 of the Sentencing Guidelines, this information should not be used in determining the applicable guidelines range.

-5-

1    (c) Guam has a Korean Tourist Visa Waiver program which allows Korean citizens to

2  enter Guam as tourists for 15 days, without applying for a visa in advance of their entry to the

3  United States. When a Korean citizen who wishes to enter as a tourist arrives at the Guam

4  International Airport, he receives two forms, an I-736 Guam Visa Waiver Information form, and

5  a Form I-94, which consists of two parts. The tourist is required to execute the I-736 and the

6  entire I-94. When he passes through Customs & Border Patrol (CBP), the inspector collects the

7  I-736 form and the top part of the I-94 form. The bottom portion of the I-94 is stapled into the

8  tourist's passport. These two forms retained by the CBP inspector are mailed to ACS-INS-SBU

9  Data Input Center, which enters this arrival information into the Treasury Enforcement Computer

10 System (TECS). Thus, CBP has a record of the tourist's date of entry.

11    When the tourist departs for Korea, he presents his passport to an airline ticket counter

12 employee. The airline employee removes the remaining part of the I-94 form; all such forms and

13 the flight passenger manifest are submitted to CBP by the airline. In turn, an agent of CBP mails

14 the collected I-94 forms to the Data Input Center, where the date of the tourist's departure is

15 entered into the computer.

16    Defendant was employed by Korean Air and worked as a customer service agent. In that

17 capacity, he routinely removed Korean tourists' I-94 forms from their passports and collected

18 them for submission to CBS. Beginning sometime in 2003, defendant agreed to a scheme

19 proposed by an owner of a nightclub which employed Korean women who had entered as tourists

20 but overstayed their 15-day visa. Defendant agreed to file the I-94 departure form for one of the

21 nightclub owner's employees, to make it appear that she had left Guam, when in fact she

22 remained on Guam working. Subsequently, defendant filed the I-94 forms for approximately 29

23 Korean citizens who had overstayed their visas. When these individuals desired to leave Guam,

24 defendant would change information such as their date of birth so that a different person was

25 reflected on the passenger manifest than the person who was actually leaving.

26    One of the nightclub owners for whom defendant filed premature I-94 Forms was Mi

27

28                                                    -6-

1    Kyung Bosley. Bosley was approached by an informant acting for Immigration and Customs

2    Enforcement. The informant asked Bosley if she would help him keep certain Korean citizens on

3    Guam, by filing their I-94 Forms to make it appear that they had left within the prescribed 15

4    days. Bosley agreed. On November 6, 2006, the informant met Bosley and gave her copies of

5    the passports and I-94 numbers for three individuals who he represented had entered Guam as

6    Korean tourists and had overstayed their 15-day limit. At that time Bosley accepted $1,400.

7    After the meeting, Bosley delivered the documents and $1,200 to defendant, for the purpose of

8    causing the I-94 data to be entered into the TECS computer to make it appear that these three

9    Koreans had left Guam, when in fact he and Bosley believed they had remained here.

10    On November 17, 2006, Bosley met with the informant again and accepted $800 for the

11    purpose of ensuring that an I-94 form purportedly issued to a fourth Korean tourist would be

12    delivered to defendant to cause it to be entered into the TECS system, again to reflect that this

13    person had left Guam. Bosley then met with defendant and gave him $800 and the documents on

14    this fourth person. Later, defendant asked Bosley to get the e-ticket number of this tourist.

15    On January 16, 2007, defendant met with the ICE informant to discuss the status of the I-

16    94 forms which he had received.

17    (d) The defendant understands that notwithstanding any agreement of the parties, the

18    United States Probation Office will make an independent application of the Sentencing

19    Guidelines. The defendant acknowledges that should there be discrepancies in the final

20    sentencing guidelines range projected by his counsel or any other person, such discrepancies are

21    not a basis to withdraw his guilty plea.

22    8. The defendant understands that this plea agreement depends on the fullness and

23    truthfulness of his cooperation. Therefore, defendant understands and agrees that if he should

24    fail to fulfill completely each and every one of his obligations under this plea agreement, or make

25    material omissions or intentional misstatements or engage in criminal conduct after the entry of

26    his plea agreement and before sentencing, the government will be free from its obligations under

27

28    -7-

the plea agreement. Thus defendant, in addition to standing guilty of the matters to which he has pled pursuant to this agreement, shall also be fully subject to criminal prosecution for other crimes, and for the counts which were to be dismissed. In any such prosecution, the prosecuting authorities, whether Federal, State, or Local, shall be free to use against him, without limitation, any and all information, in whatever form, that he has provided pursuant to this plea agreement or otherwise; defendant shall not assert any claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other provision of law, to attempt to bar such use of the information.

9. Defendant understands that whether he has completely fulfilled all of the obligations under this agreement shall be determined by the court in an appropriate proceeding at which any disclosures and documents provided by defendant shall be admissible and at which the United States shall be required to establish any breach by a preponderance of the evidence. In determining whether there has been a breach, the parties agree that any polygraph results and the polygrapher's conclusions and opinions shall be admissible.

10. The defendant understands that his sentencing may be continued, at the discretion of the United States, until after the indictment and trial of any associates involved. This will also enable the Court to see the full degree of the defendant's cooperation. The defendant therefore waives any right he may have to any speedy sentencing and hereby agrees to any continuance of his sentencing date as it may become necessary.

11. In exchange for the government's concessions in this plea agreement, the defendant waives any right to appeal or to collaterally attack this conviction but reserves the right to appeal the sentence imposed in this case. The defendant understands and agrees that the government has bargained for a criminal conviction arising from his criminal conduct. If at any time defendant's guilty plea or conviction is rejected, withdrawn, vacated or reversed, for whatever reason, or is rendered invalid for any reason, or if any change of law renders the conduct for which he was convicted to be non-criminal, defendant agrees that he will enter a guilty plea to

-8-

another charge encompassing the same or similar conduct. In such event, defendant waives any objections, motions or defenses based upon the Statute of Limitations, Speedy Trial Act, or constitutional restrictions as to the time of bringing such charges.

12. The defendant acknowledges that he has been advised of his rights as set forth below prior to entering into this plea agreement. Specifically, defendant has been fully advised of, has had sufficient opportunity to reflect upon, and understands the following:

(a) The nature and elements of the charge and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;

(b) His right to be represented by an attorney;

(c) His right to plead not guilty and the right to be tried by a jury and at that trial, the right to be represented by counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself, that is, the right not to testify;

(d) That if he pleads guilty, there will not be a further trial of any kind on the charges to which such plea is entered so that by entering into this plea agreement, he waives, that is, gives up, the right to a trial;

(e) Because this plea is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the defendant understands that he may not withdraw his guilty plea even if the court does not accept the sentencing recommendations of the government or his counsel;

(f) That, upon entry of a plea of guilty, or thereafter, the Court may ask him questions about the offenses to which he has pled, under oath, and that if he answers these questions under oath, on the record, his answers may later be used against him in prosecution for perjury or false statement if an answer is untrue;

(g) That he agrees that the plea agreement is voluntary and not a result of any force, threats or promises apart from this plea agreement;

(h) The defendant is satisfied with the representation of his lawyer and feels that his lawyer has done everything possible for his defense;

-9-

1       (i) the defendant has had this plea agreement translated into his native language and he

2 fully understands it.

3

4 DATED: _____

5                                    IN HYUK KIM
                                   Defendant

6

7 DATED: _____

8                                    JOHN T. GORMAN
                                   Attorney for Defendant

9                                    LEONARDO M. RAPADAS
                                   United States Attorney

10                                    Districts of Guam and NMI

11

12 DATED: _____        By:

13                                    KARON V. JOHNSON
                                   Assistant U.S. Attorney

14

15

16 DATED: _____

17                                    JEFFREY J. STRAND
                                   First Assistant U.S. Attorney

18

19

20

21

22

23

24

25

26

27

28                               -10-

# EXHIBIT C.1

CALL TO BOSLEY #1

11.02.2006

| | |
|---|---|
| BOSLEY: | (KO) Hello. |
| HN3960: | (KO) it's me. I am sorry. |
| BOSLEY: | (KO) I called but no answer, may be he is sleeping. |
| HN3960: | (KO) Okay, does he work in the early morning? So, what time should I call? |
| BOSLEY: | (KO) you should try evening. |
| HN3960: | (KO) Evening. The reason why I call, three ladies '15th day will be on Monday morning. so I was wondering if you could find the way either those ladies would be able to stay or should leave before they overstay . They are willing to pay if they could be informed by Sunday. |
| BOSLEY: | (KO) Okay, I will try to find out. |
| HN3960: | (KO) Do you understand what I am saying? These ladies will be overstaying if they don't leave by Sunday. So they want to be informed by Sunday afternoon so they can arrange their schedule. They said they could pay more if he want. |
| BOSLEY: | (KO) okay, I see. |
| HN3960: | (KO) again, they are willing to pay, if it is possible. |
| BOSLEY: | (KO) I see. |
| HN3960: | (KO) Do you know how long it will take after he says okay? |
| BOSLEY: | (KO) even he says okay, he has to go to work to find out. |
| HN3960: | (KO) so you mean, you can find it out right way when he goes to work at airport. |
| BOSLEY: | (KO) No, I mean, it will take one or two days |
| HN3960: | (KO) okay, one or two days. If you talk to him today, today is Thursday |
| BOSLEY: | (KO) if I talk him today, I will probably see him tomorrow. |
| HN3960: | (KO) Okay, when you meet him tomorrow, those ladies need to go with you or just hand the I-94 and money to you. |
| BOSLEY: | (KO) yes, money and.. |
| HN3960: | (KO) How about passport? |
| BOSLEY: | (KO) yes, passport and I-94 |
| HN3960: | (KO) Passport, I-94 and money |
| BOSLEY: | (KO) Yes. |
| HN3960: | (KO) it will be three hundred dollars, isn't it? |
| BOSLEY: | (KO) Yes |
| HN3960: | (KO) Then they need to pay another three hundred dollars when they leave. |
| BOSLEY: | (KO) yes. |
| HN3960: | (KO) they are willing to pay so I want you to find out it is possible. |
| BOSLEY: | (KO) Okay, I see. |
| HN3960: | (KO) can you call me and let me know? |
| BOSLEY: | (KO) okay, I will give you call. |
| HN3960: | (KO) Okay. |
| BOSLEY: | (KO) Bye. |

GOVERNMENT EXHIBIT
/

11.2.2006 3:20 pm

| BOSLEY: | (KO) Hello |
| HN3960: | (KO) It me, is it okay to hand to you a copy of passport and I-94 |
| BOSLEY: | (KO) Copy? |
| HN3960: | (KO) yes, a copy of passport. |
| BOSLEY: | (KO) she was using a copy as passport when she came here? |
| HN3960: | (KO) No, do they need to give you original passport or a copy of passport? |
| BOSLEY: | (KO) No, passport. It has to be passport, not a copy. |
| HN3960: | (KO) if they lost their passport? |
| BOSLEY: | (KO) well, if they lost their passport, how did they come if they lost passport? |
| HN3960: | (KO) I mean if they lost after they came here. |
| BOSLEY: | (KO) Oh, after they came. |
| HN3960: | (KO) yes, the I-94 usually attached to passport. Let's assume the lady took it off from passport and she lost passport. Then what they do? |
| BOSLEY: | (KO) then how they are going to depart? |
| HN3960: | (KO) they can go to the consulate to make temporary travel document when they decide to leave. They can use it to go to Korea. |
| BOSLEY: | (KO) I see. |
| HN3960: | (KO) can you ask if they can use a copy of passport. They have an I-94. They have a misplaced doubt when I ask to have a passport. They might think I will take and sell it. |
| BOSLEY: | (giggle) |
| HN3960: | (KO) so, Can you ask if they can give you a copy of passport and original I-94. |
| BOSLEY: | (KO) okay. Bye. |
| HN3960: | (KO) Bye. |

# EXHIBIT C.2

CALL TO BOSLEY

11/6/2006 01:16 PM

PHONE RING

| BOSLEY: | (KO) Hello |
| HN3960: | (KO) Hi, did you up already? |
| BOSLEY: | (KO) Yes. |
| HN3960: | (KO) I called your house but no answer. |
| BOSLEY: | (KO) Brother, I can't hear you. |
| HN3960: | (KO) Hello, hello, hello |

PHONE RING

| BOSLEY: | (KO) Hello. |
| HN3960: | (KO) Can you hear me? |
| BOSLEY: | (KO) yes but it is not very clear. |
| HN3960: | (KO) Can you hear me now? |
| BOSLEY: | (KO) Yes, I was on other line. Can I call you back? |
| HN3960: | (KO) Okay. When? |
| BOSLEY: | (KO) within twenty minutes. |
| HN3960: | (KO) Okay. |

| HN3960: | (KO) Hello |
| BOSLEY: | (KO) hello, it's me |
| HN3960: | (KO) are you done? You are busy even though you are not working. |
| BOSLEY: | (KO) Yes, I know. |
| HN3960: | (KO) did you happen to ask him? |
| BOSLEY: | (KO) No, he was sleeping. |
| HN3960: | (KO) is he sleeping? Okay, can you call me when you talk him? |
| BOSLEY: | (KO) okay. |
| HN3960: | (KO)Money and necessary documents are all set. |
| BOSLEY: | (KO) What did you say the number of persons? |
| HN3960: | (KO) Three. Do you usually meet him around ten o'clock? |
| BOSLEY: | (KO) Yes. |
| HN3960: | (KO) so could we meet around nine o'clock. |
| BOSLEY: | (KO)Okay. |
| HN3960: | (KO) here you go.Four hundred dollars per person, so it will be one thousand two hundred dollars and your commission will be two hundred dollars. |
| BOSLEY: | (KO) Wow, for real. Thank you |
| HN3960: | (KO) so meet me one hour before you see him. |
| BOSLEY: | (KO) Okay. |
| HN3960: | (KO) Are you going to go to airport. |
| BOSLEY: | (KO) Yes. |
| HN3960: | (KO) so meet me one hour early then meeting with himcall me as soon as you contact him. |

GOVERNMENT EXHIBIT

2

BOSLEY: (KO) Okay, I will call him. Bye
HN3960: (KO) okay, bye

# EXHIBIT C.3

MEETING AT KING #3 (BOSLEY)
11/6/2006

| | |
|---|---|
| HN3960: | hello. |
| Someone: | mike |
| HN3960: | Yeah. |
| Someone: | (inaudible) |
| HN3960: | Which one? No, no, no, I don't have, we don't have that yet. |
| HN3960: | yeah, later one. Probably nine thirty or ten |
| Someone: | (inaudible) |
| HN3960: | okay, alright. Hahaha, bye |

| | |
|---|---|
| HN3960: | (KO) (answering phone) hello. Yes, next to it. Okay. Yes. |
| Waitress: | anything to drink? |
| HN3960: | Coffee, I am waiting for one more person. |

| | |
|---|---|
| HN3960: | (KO) hello, where are you? Excuse me? She is in restroom? Yes, sir, I am waiting for her. Has she left yet? 8:30? Oh, I am here already and have been waiting for her. Yes, could you please have her call me? Okay. Bye. |
| HN3960: | (EN) Yes, she thought the meeting is at 8:30, yeah, she is still at restroom right now. Yes, she is at home. She was thinking 8:30 meeting. Yeah. Okay. Lan-ya. (To waitress) Excuse me, please leave it on table, I go smoke. |
| HN3960: | (KO) (answering phone) hello, where are you? We suppose to meet at 8:00.   Hurry up. |
| HN3960: | (KO) (answering phone) hello, sir, I will call you. |

| | |
|---|---|
| HN3960: | Thank you |
| Waitress: | you're welcome. |

| | |
|---|---|
| HN3960: | (KO) you thought the meeting was 8:30? What are you going to drink? |
| BOSLEY: | coffee. (SIGH) |
| HN3960: | (KO) by the way, what is that? So, it passed one week? |
| BOSLEY: | (KO) one week |
| HN3960: | (KO) how do you assure that it is work? Do you know anyone have done it before? Are you sure? So, we don't know that whether it will work or not, unless the lady comes back from Korea after they depart from Guam. right? Were they able to come back? |

GOVERNMENT
EXHIBIT
3

| | |
|---|---|
| BOSELY: | (KO) yes, many of them came back. |
| HN3960: | (KO) they did not get in any trouble when they came back even they overstayed. Is it right? |
| BOSLEY: | (KO) what I have heard about this is the immigration will not have any record if they don't turn in I-94. |
| HN3960: | (KO) but usually the airlines take I-94 from passenger. Isn't it? So, they don't stamp it. |
| BOSLEY: | (KO) they do. |
| HN3960: | (KO) so the airlines take it from passenger and turn it in to immigration. |
| BOSLEY: | (KO) could be. |
| HN3960: | (KO) I have seen the airlines agent collect it at check in counter. I guess the airlines have to turn it in to immigration. |
| BOS LEY: | (KO) you know, the passport usually has stamp that indicate in and out date. But there will be no out date stamp if they do this. |
| HN3960: | (KO) when the ladies depart. |
| BOSLEY: | (KO) Right. The immigration will have no record when those ladies left from here, the immigration only have arrival date record. The immigration won't know. The immigration officer might think some system error or something |
| HN3960: | (KO) you mean, immigration side worker will be involve to help us do this... |
| BOSLEY: | (KO) I brought the machine. |
| HN3960: | (KO) oh, you brought it? How did you put in the car? Wasn't it heavy? |
| BOSLEY: | (KO) it was not. |
| HN3960: | (KO) Hahaha, how about Sisley? |
| BOSLEY: | (KO) Working |
| HN3960: | (KO) same place? |
| BOSLEY: | (KO) no, she is working at vanjour. |
| HN3960: | (KO) vanjour? She quit? Why? |
| BOSLEY: | (KO) (inaudible) |
| HN3960: | (KO) I thought she makes a lot of money out of tips, wasn't she? Oh, may be people spent only small money, no big money spender. Chinese? massage ladies come? |
| BOSLEY | ... |
| HN3960: | (KO) you have done it so I have to trust you. |
| BOSLEY: | (KO) (inaudible) |
| HN3960: | (KO) how about those ladies who overstayed. |
| BOSLEY: | (KO) they are here. |
| HN3960: | (KO) what do they do because the store is closed? |
| BOSLEY: | (KO) they don't work. |
| HN3960: | (KO) they just stay at home. So, they have done it and did not have any trouble to enter Guam. |
| BOSLEY: | (KO) Yes, many of them have done it. |

| | |
|---|---|
| HN3960: | (KO) yes, I knew and heard about In Hyuck does it. But it is unbelievable. |
| BOSLEY: | (KO) many of them came back, I also know one person who has done it. |
| HN3960: | (KO) wow, if it is possible as we talk would be awesome and those ladies could go and come back without worry. Do the ladies have to pay when they leave? |
| BOSLEY: | (KO) yes, also they have to let us know. |
| HN3960: | (KO) okay, they have to be informed you the date they wish to leave. |
| BOSLEY: | (KO) Yes, because we also have to see the immigration side worker's schedule. When these ladies wish to leave and the immigration side worker's who help us out, work that day then those ladies successfully depart with out getting in trouble. |
| HN3960: | (KO) no matter what, the ladies have to let you know, other wise they will be record as overstay. |
| BOSLEY: | (KO) there will be stamp on the passport. |
| HN3960: | (KO) no, there will be no stamp for departure. |
| BOSLEY: | (KO) The passport will be stamped when they depart. |
| HN3960: | (KO) No, the passenger will not go thru immigration inspection for departure. |
| BOSLEY: | (KO) Then what will be problem. |
| HN3960: | (KO) that is what I don't understand. |
| Unknown female: | (KO) as I know, the I-94 has stamped with maximum length of staying, so turn in I-94 first before the day then technically the record shows the person left even he or she is on Guam. |
| BOSELY: | (KO) yes, right. Right. |
| HN3960: | (KO) okay, just turn I-94 in, that's why they need that. |
| BOSLEY: | (KO) Right, right. So they are wave for immigration inspection. |
| HN3960: | (KO) No, I have been telling you, there will be no immigration inspection for departure. |
| Unkown female: | (KO) No, it is not inspection... |
| BOSLEY: | (KO) I have heard something about adjusting schedule for departure. |
| Unknown female: | (KO) Even departure, they are... (Inaudible) |
| BOSLEY: | (KO) the airlines must do something. |
| HN3960: | (KO) the airlines should collect I-94 from passenger, but they probably switch with something... |
| BOSLEY: | (KO) right. |
| HN3960: | (KO) so I only need to hand to you three I-94s and copies of passport. |
| Unknown female: | (KO) Yes, those are copies? |
| HN3960: | (KO) Yeah, those ladies, they don't trust other people, so they don't want to give me their passport not even to their madam. |
| Unknown female: | (KO) is that right? |

| | |
|---|---|
| HN3960: | (KO) Those girls share information's among themselves and the websites are well updated. Just recently, there was an accident. |
| BOSLEY: | (inaudible) |
| HN3960: | (KO) Right, I am not supports get this from them. Those girls are getting smatter and well trained. |
| | So, they have to pay more if they don't have this? |
| Unknown female: | yes. |
| HN3960: | (KO) Three person. One of girl was born in 1980, the other, she is kind of old, was born in 1965 and last girl born in 1976. |
| | You said copy can be used. |
| BOSLEY: | (KO) so, the older girl who born in 1965 is the Madame? |
| HN3690: | (KO) Hahaha, probably, what else she can do. She is kind of old. And regarding the passport copy, they make copy like this angle. |
| BOSLEY: | (KO) Okay. |
| HN3960: | (KO) I was not sure about stamp. |
| BOSLEY: | (KO) in my opinion, the stamp doesn't matter unless they have an I-94. |
| | Isn't here non smoke? |
| HN3960: | (KO) you can't smoke in side restaurant. |
| | One, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, one thousand two hundred and two hundred. |
| | Those girls seem to be stay here forever. |
| BOSLEY: | (KO) are they pretty? |
| HN3960: | (KO) Oh, please take a look those pictures. Do you think they are pretty? |
| BOSLEY: | (Inaudible) |
| HN3960: | (KO) it becames very hard to find the ladies. Pak Chan ho's store has some ladies and Takara.. |
| BOSLEY | (KO) Where is this store? Is it newly opened? |
| HN3960: | (KO) it is going to be open soon, but have had a hard time to supply ladies. Could you allow your store's ladies work at the new store? |
| BOSLEY: | (KO) But they don't want to work. |
| HN3960: | (KO) they may have a man who support them. That's why they don't want to work. |
| BOSLEY: | (KO) Are you business partner? |
| HN3960: | (KO) I just help them out. Even giving a help have kept me busy. |
| BOSLEY: | (KO) it doesn't look like, |
| HN3960: | (KO) I just help them. |
| BOSLEY: | (KO) you moved to here? This location is better right? I thought so. |
| HN3960: | (KO) yes, it is much better. |
| BOSLEY: | (KO) there is a Bingo across. |
| HN3960: | (KO) yes, it get very busy when the bingo open. The bingo opens 4days in a row. |
| BOSLEY: | (KO) it is perfect location for killing the time before the bingo. |
| HN3960: | (KO) it is also very spacey. |

| | |
|---|---|
| BOSLEY: | (KO) it is almost big as here. |
| HN3960: | (KO) yes, it is very big. |
| Unknown female: | (inaudible) |
| HN3960: | (KO) Today? |
| BOSLEY: | (KO) yes. |
| HN3960: | (KO) today, but how am I going to trust this. Someone will call you if it is done. |
| BOSLEY: | (KO) the copies probably returned to them. |
| HN3960: | (KO) you mean the passport copies. How about I-94? |
| BOSLEY: | (KO) what about I-94? |
| Unknown female: | (inaudible) |
| HN3960: | (KO) oh, right. These girls pretend to be left, therefore, the I-94 have to be returned to immigration. Is the passport copies will be returned as proof? |
| BOSLEY: | (KO) I will ask them to sigh at passport copy to proof it's done without problem. |
| HN3960: | (KO) yeah, those girls don't trust other. How dare they are. I have heard about this, but I wasn't sure. |
| Unknown female: | (KO) when thing goes smooth and nice they don't complain, but when something goes wrong, they always blame us big time. |
| HN3960: | (KO) Oh, well I have to trust you since you said you have done it. |
| Unknown female: | (KO) Many of them have done it. |
| BOSLEY: | (KO) yeah, many. One of the girls who used to work at YEBO, overstayed 5 or 6 months went to Austria. She came back and overstayed again went back to Korea. |
| HN3960: | (KO) so it is trustable. I was thinking no one believes this and It is a famous repertory to temps girls, I have heard when the guy tried to hook up the girls use this as an allurement. |
| Unknown female: | (KO) I have also heard they guy mentions about marriage for just dating. |
| HN3960: | (KO)I have heard that guy ask a date for exchanging turn in I-94 but I would not believe that before. You know, I also heard Cho En Young, she used to work at Korean air, and she did it along with Tour Company. |
| | By the way, what time are you going to meet? |
| BOSLEY: | (KO) nine o'clock. |
| HN3960: | (KO) nine o'clock, you still have a time. Is he staying at Mariana? |
| BOSELY: | (KO) No, I am not sure. He is going to work so we are going to meet around airport. |
| HN3960: | (KO) The copy will be returned to them and if I-94 turn in within one week after those ladies came, they wouldn't be overstayed. Right? |
| BOSLEY: | (KO) Yes, it is hard if more then one week. |
| Unknown female: | (KO) Yes, It is still okay if it is one week, close to 15days is also possible but kind of hard. |

| | |
|---|---|
| HN3960: | (KO) you mean it is possible but has a difficulty. It could cost more. |
| BOSLEY: | (KO) He said no period. Even more money. |
| HN3960: | (KO) Anyway he has connected to immigration side worker. So what is so difficult? |
| BOSLEY: | (KO) well, but he said no. |
| HN3960: | (KO) How come he said okay last time? Those girls would be overstayed if you have said okay last Sunday. |
| BOSLEY: | (KO) I meant it is okay about one week but can't be more than one week. |
| HN3960: | (KO) just keep it; I will go your house for picking it up. Shall we go? |
| BOSLEY: | (KO) can I finish this coffee? |
| HN3960: | (KO) okay, I just don't want you to be late. |
| BOSELY: | (KO) it is not far from here. |
| HN3960: | (KO) Okay, why don't you work if you don't mind to ask? |
| Unknown female: | (KO) Just, I can't find a job. |
| HN3960: | (KO) that's grate you must be stable without income. |
| Unknown female: | (KO) No, I just don't know anything. |
| BOSLEY: | (KO) By the way, whose store is it? I heard the lady who used to own ROCK BONG KI bar, she is going to open other bar also. |
| HN3960: | (KO) who is that used to own ROCK BONG KI bar? |
| BOSLEY: | (KO) Oh, what was her name? I can't remember her name. She married one of the tour guides. I can not remember name. Anyway what I heard is she is going to open other bar somewhere soon or later. |
| HN3960: | (KO) Where? |
| BOSLEY: | (KO) I didn't ask. |
| HN3960: | (KO) anybody could open bar if they are able to supply girls to bar some of bar's business is not so well because they are not having girls and have difficulty to find the girls. |
| BOSLEY: | (KO) Business is not good? |
| HN3960: | (KO) If the bar has girls, the bar's business is okay. Club TAKARA's new girl makes three hundred dollars one day. Three hundred dollars. |
| BOSLEY: | (KO) For real? Club TAKARA need a madam? |
| HN3960: | (KO) yeah, because So Hyun quite. |
| BOSLEY: | There is big gap, hot girls make good enough money at Korea so they don't want to come here, regular girls can't make money. Even not pretty girls make three to four thousand at Korea, so they are not interested if they make less money at here. We also can't promise them because economy is not so good. |
| HN3960: | (KO) these girls have gotten smarter, they would not trust me doing this. |
| Unknown female: | (KO) are they overstay already? |
| BOSLEY: | (KO) No. |

| | |
|---|---|
| HN3960: | (KO) no, those girls just came here recently. 27th or 28th of October. Man, I am telling you, I have a hard time persuade them into believing me. |
| | I was thinking I should have them meet In Hyok (laugh) and listen from him. |
| BOSLEY: | (KO) when is the bar open? |
| HN3960: | (KO) it can't be open now with not having enough girls. So we don't want those ladies who are already here to not leave us. |
| BOSLEY: | (KO) who is the owner. |
| HN3960: | (KO) the owner is form Korea, not a local Koran. |
| BOSLEY: | (KO) the owner is form Korea and also madam. It would be hard. |
| HN3960: | (KO) why don't you come and help us, you can do madam. Are you pondering on plan to open your business or something? Don't you have a boredom just stay home? Well even myself, I have gone out long. |
| BOSLEY: | (light) |
| HN3960: | (KO) please could you call me. Let's go. We had two coffees and one ice tea. |
| BOSLEY: | (KO) Do you keep in touch with Hyun Hyock. |
| HN3960: | (KO) he went Korea. He calls me sometimes and says he doesn't find the job yet. |
| BOSLEY: | (KO) Where is he? |
| HN3960: | (KO) in Seoul. |
| BOSLEY: | (KO) isn't he going to come here? |
| HN3960: | (KO) didn't you know he was overstayed |
| BOSLEY: | (KO) Yes. |
| HN3960: | (KO) how he could come? |
| BOSLEY: | (KO) He told me that he would do something with his passport to come here. |
| HN3960: | (laugh) he is not coming without secure job, you know he had a hard time at while he was here. |
| BOSLEY: | (KO) How about Hyo Chul? |
| HN3960: | (KO) I saw him with Dong Hee last time. |
| BOSLEY: | (KO) he is not seeing Angela anymore? |
| HN3960: | (KO) well, he is Angela's slave. (Laugh) |
| Unknown female: | (KO) is Angela still doing that? |
| HN3960: | (KO) Well, is Angela still own club business class? |
| BOSLEY: | (KO) I think so. |
| HN3960: | (KO) how about .....? |
| | Is Tumon Village is good? How much is it? How many bedrooms? |
| BOSLEY: | (KO) two bedrooms, one thousand two hundred dollars include water. |
| HN3960: | (KO) could you please ask them next available time? The immigration side worker's days off are Friday and Saturday so they have to avoid those two days. |
| BOSLEY: | (KO) I am not sure, I will ask. |

| | |
|---|---|
| HN3960: | (KO) no rush, whenever you have chance to ask, you are going to meet him/her later anyway. Just let me know about his days off and possibility. Can you call him and ask? |
| BOSLEY: | (KO) (ON THE PHONE) hello, Hi, it's me. Is it possible today? Okay, you can do it today. When you can't do it? Your days off are not set? Your days off are Friday and Saturday right now. No, I have a meeting with mike now, he wants to me ask you. One week before, okay. Anyway I am going to leave now. He says he has to know one week ahead time and days off are Friday and Saturday right now. His days off are subject to change sometimes. |
| HN3960: | (KO) okay, call me. |
| BOSLEY: | (KO) Yes, I will. |
| HN3960: | (KO) please stop by our game room sometimes. |
| Unknown female: | (KO) yes. |
| BOSELY: | (KO) I will call you tomorrow. |
| HN3960: | (KO) okay, call me. |
| BOSLEY: | (KO) see you tomorrow. |
| HN3960: | (KO) okay bye now. |
| Unknown female: | (KO) Bye, take care. |
| BOSLEY: | (KO) bye. |