LUJAN AGUIGUI & PEREZ LLP
Attorneys at Law
DNA Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for Defendant In Hyuk Kim aka Dominic*

**FILED**
DISTRICT COURT OF GUAM

APR 1 8 2008

JEANNE G. QUINATA
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT

## TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>IN HYUK KIM aka DOMINIC,<br><br>Defendant. | CRIMINAL CASE NO. CR07-00064<br><br>**MOTION TO EXCLUDE GOVERNMENT EXHIBITS** |

### INTRODUCTION

Defendant, IN HYUK KIM, by and through counsel, LUJAN AGUIGUI & PEREZ LLP, moves to exclude from the trial of this matter the transcripts referenced in **Exhibit A**. These purport to be transcripts of recordings translated from the Korean language to the English language. The transcripts should be excluded because they are inadmissible hearsay, they were not prepared by a qualified interpreter, they have not been properly authenticated, they have not been certified as accurate translations, and they are unreliable, rough translations.

### FACTS

Upon information and belief, the Government intends to present transcripts of recordings purportedly translated from the Korean language to the English language. These transcripts are referenced in **Exhibit A** and are also identified in the Government's Exhibits as Exhibits 2, 3, 4,

5, 18, 20, 21, 22, 24, and, 25. Each of the transcripts appears to have been translated by Iju Kim Michigami. This translator's name does not appear on the United States District Court of Guam list of approved translators. See **Exhibit B**. Michigami has not been qualified as an expert. The transcripts have not been certified under oath as true or accurate translations.

At the motions hearing on February 11, 2008, the defense objected to the transcripts, asserting:

> Objection; no foundation has been laid to establish that the translation from Korean to English was done accurately or by a court certified translator, court approved certified translator. In further support of my objection, I would note that with respect to another transcript which I anticipate will be submitted regarding a meeting between Mr. Kim and the informant, that the agent report indicates that it was only a rough translation – from Korean to English, and therefore is unreliable. **(Exhibit C.1, 13: 1-11)**.

The Government responded:

> This is not a trial, it's a motion to suppress. What we're concerned with now is not the accuracy of what was said so much as who said it and when they said it, that is to say, it's a statement of a co-conspirator. If we were to go to trial, of course, we'll have an interpreter who will say whether or not every word is correct. Right now, we're identifying the nature of the document for purposes of counsel's motion to suppress, and the accuracy of the translation was not part of his motion. **(Exhibit C.2, 13:13-22)**.

Subsequent to the motions hearings, the Government has not had the originally submitted transcripts re-translated. Instead, upon information and belief, the transcripts have only been cleaned up for appearance but their content remains the same.

During the motions hearing Agent John Duenas testified that he did not know who translated the transcripts from Korean to English. He also testified that he did not know whether or not the translations were accurate. (C.3, 71:14-24).

In the Report of Investigation dated 2/12/07, the Report states that the recorded conversation between the informant and Kim was only "roughly translated from Korean into English." **Exhibit D**, page 4, paragraph 9.

2

*USA vs. In Hyuk Kim aka Dominic*; CR07-00064
Motion to Exclude Government Exhibits

Case 1:07-cr-00064   Document 72   Filed 04/18/2008   Page 2 of 14

## ARGUMENT

The transcripts of recorded conversations purportedly translated by Michigami from Korean to English should be excluded from trial because: (a) Michigami has not been qualified as an expert; (b) has not been certified as translator; (c) is not a court-approved or court-certified translator; (d) has not certified under oath the accuracy of the translations; (e) no foundation has been laid for their admissibility; (f) they have not been authenticated; (g) they are unreliable, rough translations.

The Federal Rules of Evidence, Rule 604 provides, "An interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation to make a true translation." Documentary evidence is admissible if authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Federal Rules of Evidence, Rule 901(a). Written translations are subject to this authentication requirement. *United States v. Nouira*, 2006WL 2417245 (E.D.N.Y. Aug.21, 2006). Therefore, "witness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator." *Jack v. Trans World Airlines, Inc.*, 854 F.Supp 654, 659 (N.D.Cal.1994).

Applying the law stated to the instant facts, the transcripts should be excluded from the trial of this matter.

/

/

/

/

/

3

*USA vs. In Hyuk Kim aka Dominic*; CR07-00064
Motion to Exclude Government Exhibits

Case 1:07-cr-00064   Document 72   Filed 04/18/2008   Page 3 of 14

## CONCLUSION

For the reasons stated and on the basis of such further evidence and argument which may be presented, the transcripts of recordings of conversations purportedly translated from Korean to English should be excluded from the trial of this matter.

Dated this 18th day of April, 2008.

LUJAN AGUIGUI & PEREZ LLP

By: /s/ Peter C. Perez

**PETER C. PEREZ, ESQ.**
*Attorneys for Defendant In Hyuk Kim aka Dominic*

K-0021/878-00/0878/PCP/dmg

4

*USA vs. In Hyuk Kim aka Dominic*; CR07-00064
Motion to Exclude Government Exhibits

Case 1:07-cr-00064   Document 72   Filed 04/18/2008   Page 4 of 14

# EXHIBIT A

Audio Recordings and Transcripts

| No. | Title | Date/Time | Recording Type | 6051S No. | Transcript | Report No. |
|---|---|---|---|---|---|---|
| 1 | Two Calls to BOSLEY | 11/2/2006 15:16 PM & 15:26 PM | Phone Call/Audio | 2962144 | Yes (Two Transcripts) | 002 |
| 2 | Call to BOSLEY # | 11/6/2006 13:16 PM | Phone Call/Audio | 2962145 | Yes | 002 |
| 3 | Meeting at King's #3 (BOSLEY) | 11/6/2006 19:30 PM | Cassette/Audio | 3367067 | Yes | 002 |
| 3A. | Meeting at King's #3 (BOSLEY) | 11/6/2006 19:30 PM | DVD-R/Audio/Video | ##### | ##### | 002 |
| 4 | Call to BOSLEY | 11/15/06 13:50 | Cassette/Audio | 2962146 | Yes | ##### |
| 5 | Meeting at King's #6 (BOSLEY) | 11/18/06 19:50 | DVD-R/Audio/Video | | Yes | 003 |
| 6 | BOSLEY | 12/29/06 16:49 | Cassette/Audio | 3367072 | Yes | ##### |
| 7 | Call from KIM to HN3960 | 1/13/07 15:46 | Cassette/Audio | 3367073 | Yes | 004 |
| 8 | Meeting at King's (KIM) | 1/16/07 17:21 | CD-R/Audio | 3367074 (Item 1) | Yes | 004 |
| 8A | Meeting at King's (KIM) | 1/16/2007 17:21 | CD-R/Audio/Video | 3367074 (Item 2) | ##### | 004 |
| 9 | Call to BOSLEY | 2/7/07 13:44 | Audio | | Yes | ##### |
| 10 | Call to KIM | 2/7/07 13:50 | Audio | | Yes | ##### |

# EXHIBIT B



Virginia T. Kilgore
Case Manager
District Court of Guam
Phone: (671) 473-9141
Fax: (671) 473-9152
Virginia_T_Kilgore@gud.uscourts.gov
+10 hrs GMT

## 2008 DISTRICT COURT INTERPRETERS

| Interpreter Name | Language | Contract Status | Contact Information |
|---|---|---|---|
| Jane Hua | Vietnamese | current | 727-3304 |
| Julia Berg | Mandarin | current | 777-1180 649-1213 |
| Pirmo Caburian | Tagalog | current | 692-2055 477-9164 |
| Tarrio S. Clark | Japanese | current | 648-1960 688-6300 |
| Tatasy Curley | Chukeese | current | 734-9050 472-3331 |
| Jennifer Kang | Korean | current | 689-2424 |
| Hee Jung Won | Korean | current | 472-0667 |
| Sung Woo Yoon (Victor) | Korean | current | 688-0933 |
| Krishnan Seerangan | Tamil | current | 632-0849 482-0849 |

# EXHIBIT C.1

MR. PEREZ: Yes, Your Honor. Objection; no foundation has been laid to establish that the translation from Korean to English was done accurately or by a court certified translator, court approved certified translator. In further support of my objection, I would note that with respect to another transcript which I anticipate will be submitted regarding a meeting between Mr. Kim and the informant, that the agent report indicates that it was only a rough translation from English -- from Korean to English, and therefore is unreliable.

THE COURT: Okay, Ms. Johnson?

MS. JOHNSON: This is not a trial, it's a motion to suppress. What we're concerned with now is not the accuracy of what was said so much as who said it and when they said it, that is to say, it's a statement of a co-conspirator. If we were to go to trial, of course we'll have an interpreter who will say whether or not every word is correct. Right now we're identifying the nature of the document for purposes of counsel's motion to suppress, and the accuracy of the translations was not part of his motion.

THE COURT: All right.

MR. PEREZ: Your Honor, in terms of where the government was going in opposition, they have not

# EXHIBIT C.2

```
 1        Q.   And you didn't hear what they discussed, if
 2   anything, in the car?
 3        A.   That's correct.
 4        Q.   Okay.  And in terms of orchestrating meetings,
 5   I mean, you're not saying that -- that law enforcement
 6   did not orchestrate the various meetings between the
 7   informant and Bosley, are you?
 8        A.   Well, we, we orchestrated it, we planned it,
 9   we helped them plan it, and we actually told him what
10   we needed to substantiate during this meeting.
11        Q.   And you also orchestrated the meeting between
12   the informant and Kim; correct?
13        A.   Yes.
14        Q.   The transcripts that were referred to in this
15   hearing earlier, I believe it was Exhibit 1, 2, 3, you
16   know what I'm talking about, right?
17        A.   Yes.
18        Q.   You don't know who translated those
19   transcripts from Korean into English, correct?
20        A.   That's correct.
21        Q.   And you can't say with certainty that those
22   translations are true and accurate, correct?
23        A.   I know they're true.  Whether they're
24   accurate, I don't know.
25        Q.   Okay.  Well, you don't speak Korean, correct?
```

# EXHIBIT D

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 4 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER GM16CR06GM0005 |
| | REPORT NUMBER: 004 |

Force Agents (TFA) Barbara Tayama and Erwin Fejeran established surveillance at King's Restaurant in Harmon at about 5:45 pm. The CD parked in front of the restaurant, entered and waited for DOMINIC to arrive.

6. At about 6:07 pm, TFA Tayama and agent Kibota observed a man, later confirmed as DOMINIC, arrive in a green Toyota 4Runner license #MTE2346 and wearing beige shorts and a light blue short sleeve shirt. DOMINIC parked in front of King's and entered the restaurant. At about 6:09 pm, as observed by TFA Fejeran, DOMINIC joined the waiting CD in the restaurant and began a conversation in Korean.

7. The meeting concluded at about 7:00 pm. Surveilling agents followed DOMINIC as he left the restaurant and drove to Harmon Villa Gardens Apartments in Harmon. A few minutes later, agents Tayama and Kibota saw DOMINIC walking to his car with 2 water bottles. Agents Tayama and Kibota followed DOMINIC to the vicinity of Micronesia Mall where they temporarily lost site of him for about 10 minutes and then saw the 4Runner drive into the parking garage at Micronesia Mall at which time surveillance was terminated.

8. After the meeting with DOMINIC, the CD met agents Fejeran and Robertson in a deserted parking lot where they retrieved the covert recording and transmitting equipment. The CD also surrendered the passport photocopies that were displayed to Dominic during the meeting. The CD advised that the meeting went well and that DOMINIC acknowledged previously receiving the passport photocopies and the money from BOSLEY for the first three I-94s but not the $400.00 given to Bosley to secure DOMINIC's assistance in facilitating the departure from Guam of one of the "notional" Korean females. The CD said that during the conversation, DOMINIC claimed that he used to operate by himself but was caught by an unspecified Immigration officer who noticed that DOMINIC was not turning in properly stamped I-94s. As told to the CD by DOMINIC, that Immigration officer agreed to show DOMINIC how to turn in fraudulent I-94s without getting caught. In exchange, DOMINIC paid the Immigration Officer $300.00 for each I-94 that was fraudulently turned in to CBP.

9. The recorded conversation between the CD and DOMINIC was roughly translated from Korean into English and a copy of the transcript is in the case file. A review of the transcript and the covert video shows the following:

　　a. The CD and DOMINIC discussed the Guam Visa Waiver program and how extension of the authorized length of stay for Korean tourists from 15 days to 3 months would affect the (illegal) employment of Korean females in clubs and bars in Guam. DOMINIC's comments on this topic along with his reference to "15 day" girls demonstrates his familiarity with the issue of Korean females coming to Guam as tourists and illegally working in clubs and overstaying their authorized 15 in Guam for the specific purpose of continuing

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.