kim.rsp2

LEONARDO M. RAPADAS
United States Attorney
KARON V. JOHNSON
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF GUAM

| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 07-00064 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **UNITED STATES' RESPONSE TO** |
| vs. | ) | **DEFENDANT'S MOTIONS FILED** |
| | ) | **APRIL 18, 2008** |
| IN HYUK KIM, | ) | |
| | ) | |
| Defendant. | ) | |

A. Motion to Suppress Confession

     This court gave defendant the opportunity to file motions concerning the superseding indictment, but did not authorize him to take another bite at the apple, by raising a new theory for suppression of defendant's confession, on a ground that he neglected to think of it the first time.

     Second, this motion is frivolous. The record reflects that defendant was arrested at 5:10 a.m.; by 5:30 a.m. he had confessed and subsequently made a written statement. Mr. Gorman was not called until after defendant had confessed. ICE had proposed that defendant cooperate in other investigations against bar owners which were bringing in employees under the Guam Tourist Visa Waiver program. After Mr. Gorman had met with the defendant, the defendant made other statements concerning other matters. None of these statements are before the court, because they will not be used in this trial. Government counsel specifically advised Mr. Perez that the statements

1

defendant made after conferring with Mr. Gorman were considered Rule 11 proffers by this office and would not be used by the government. A copy of this part of the transcript is attached hereto as Exhibit A. If defendant wished to raise a Rule 11 violation, he should have called Mr. Gorman as a witness during his motion to suppress the confession.

Rule 11 proffers are controlled by Federal Rule of Evidence 410, which excludes "any statement made in the course of plea discussions with <u>an attorney for the prosecuting authority</u> which do not result in a plea of guilty, or which result in a plea of guilty later withdrawn." (Emphasis added). Defendant's statements to ICE agents at 5:30 a.m. were not made to an AUSA, nor did any government attorney authorize agents to act on behalf of the United States.

Defendant fails to cite the controlling authority on this issue, <u>United States v. Sitton</u>, 948 F.2d 947, 957 (9th Cir. 1992) (abrogated on guidelines sentencing issues after <u>Koon v. United States</u>, 518 U.S. 81 (1996)). Rule 410 applies only to discussions with government counsel.

> "The sheriff's deputies, while government agents, were not attorneys for the government. The specific language of the current Rules provides no room to expand their scope to cover discussions with law enforcement officers generally. The Rules were amended effective December 1, 1980, specifically to clarify that only statements during the course of plea negotiations with a government attorney, not statements made to law enforcement officers generally, are inadmissible. *See* Notes of Advisory Committee accompanying 1979 Amendments to Rule 11 ..." <u>Id.</u>

B. <u>Admission of the Korean-English Transcripts</u>.

Presently, the government is in the process of matching the English translations to the audio/video recordings that were made of two meetings with Bosley and one with the defendant. The government will call a witness who is fluent in English and Korean, to testify under oath that the transcripts are a reasonably accurate translation of the Korean conversations which were recorded.

Rule 702 defines an expert as someone whose specialized knowledge will assist the trier of fact to understand the evidence; the expert need only be qualified by knowledge, skill, experience, training, or education. Rule 901 only requires that the interpreter testify under oath, and authenticate the document as a true and accurate translation. The qualifications of the witness goes

- 2 -

1  to the weight of the evidence, not its admissibility.

2  Defendant has chosen the wrong remedy. The only basis to exclude these translations is to contest their accuracy. He was provided the video/audio tapes months ago and has had ample time to verify the translations, yet he does not identify any specific errors. The standard method of resolving such issues is set forth in United States v. Abonce-Barrera, 257 F.,3d 959 (9th Cir. 2001). Typically, as had occurred in other trials before this court, both parties have the conversations translated. If there is any disagreement, the parties' translators meet, listen to the tapes again, and try to resolve any disputes in the interpretation of particular words or passages. If the defendant is still not satisfied, he is entitled to introduce his own competing translation.

C.  Prosecutorial Vindictiveness

Defendant rejected the government's proposed guilty plea and indicated he would go to trial. In response to his decision to go to trial, the government continued this investigation and ultimately found three percipient witnesses in the United States who have knowledge of his involvement. The superseding indictment followed. There is no question that the superseding indictment was brought as a result of defendant refusing to plead guilty. Had he pled guilty to the initial indictment, the standard plea agreement provided that the government would not prosecute the defendant for any non-violent crimes committed in the Districts of Guam and the CNMI. Because he indicated he would go to trial, the government brought all the charges related to his criminal conduct, so that they could be presented in one trial before one jury, rather than expend government and court resources on successive prosecutions. The defendant knew such potential charges existed, because the very first report of investigation in this case, Exhibit A in his motion, concerned the 2006 arrest and debriefing of Ye Ju An (Count IV).

Defendant fails to cite the seminal authority in this area. These events all occurred prior to trial. The government had the right to offer defendant a plea to some charges, and if he rejected the plea agreement, to bring additional charges before trial. Bordenkircher v. Hayes, 434 U.S. 357 (1978) resolved this issue thirty years ago. There, one Hayes committed his third felony, a forgery, thereby subjecting him to Kentucky's third-strike law, which required a mandatory term of life

imprisonment. The district attorney offered a plea to the forgery, and a five-year sentence. If Hayes did not plead guilty, the district attorney said he would go back to the grand jury and obtain an indictment under the Habitual Criminal Act. The posture of the case was very clear:

> "It is not disputed that the recidivist charge was fully justified under the evidence, that the prosecutor was in possession of this evidence at the time of the original indictment, and that Hayes' refusal to plead guilty to the original charge was what led to his indictment under the habitual criminal statute." Id. at 359.

The Court acknowledged the general rule, that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort," citing North Carolina v. Pearce, 395 U.S. 711 (1969) (resentencing after a successful appeal). It went on, however, to allow Kentucky to do precisely that to Hayes. It attempted to distinguish plea bargaining from the procedural posture of North Carolina v. Pearce, and Blackledge v. Perry, 417 U.S. 21 (1974), by emphasizing that the due process violations in these cases "lay not in the possibility that a defendant might be deterred from the exercise of a legal right ... but rather in danger that the States might be retaliating against the accused for lawfully attacking his conviction." Id. at 363. Reasoning that plea bargaining "flows from the 'mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial," id., the Court held that it was not unconstitutional or vindictive for a prosecutor to attempt to induce a guilty plea by promises of recommending a more lenient sentence or a reduction of charges. The Court acknowledged that confronting the defendant with the risk of more severe punishment may indeed have a discouraging effect on his constitutional right to trial. It admitted it had "accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." Id.

It is not inherently vindictive to charge the defendant with more serious crimes, if he exercises his right to trial. In United States v. Goodwin, 457 U.S. 368 (1982), the defendant had originally been charged with a variety of misdemeanors after his car had struck an officer as he fled from a traffic stop. When he rejected the government's plea offer and announced his decision to go to trial, the government brought a four-count indictment charging felonies arising out of the same

- 4 -

incident. He appealed his felony conviction, which was reversed by the 4th Circuit. The court of appeals held that this sure looked like vindictive prosecution, because the more serious charges had only been brought after the defendant exercised his right to go to trial; it created a presumption of vindictiveness which the government would have to overcome with objective evidence that the increased charges could not have been brought before the defendant exercised his rights. The Court reversed. It noted that the presumption of vindictiveness which the Court had imposed in North Carolina v. Pearce, and Blackledge v. Perry, arose when the defendant exercised his right to a complete retrial, i.e., after he had successfully attacked his conviction. Given the "institutional bias inherent in the judicial system against the retrial of issues that had already been decided," there was "institutional pressure" to subconsciously motivate a vindictive prosecutorial or judicial response to a defendant's exercise of his right to obtain a retrial of a decided question." Id. at 377.

The Court acknowledged that Bordenkircher necessarily arose from the Court's acceptance of plea negotiations. Clearly it is in the defendant's interest for the government to abandon charges which were originally brought, in an attempt to obtain a guilty plea. Likewise, the initial indictment "does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." Id. at 380. Accordingly, the Court refused to presume vindictive prosecution from the government's additional charges after the defendant indicated he was rejecting the plea bargain. "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." Id at 382.

Defendant's authority is not on point. For example, United States v. Gallegos-Curiel, 681 F.2d 1164 (9th Cir. 1982), does not involve plea bargaining at all, but rather concerns when the presumption of vindictiveness should be applied in other situations. The District of Arizona had a sort of fast-track system that allowed INS to charge misdemeanor illegal entries; if the alien pled

guilty at his first appearance before the magistrate, the case was never presented to the U.S. Attorney's office. Gallegos-Curiel pled not guilty, which resulted in the files being reviewed by an AUSA, who brought an indictment charging a felony. The district court presumed an appearance of vindictiveness from the fact that the defendant was indicted for a felony after he entered a plea of not guilty to a misdemeanor at an initial appearance, and dismissed the indictment. The Ninth Circuit reversed. The court noted that in presuming vindictiveness, there was a "sharp" distinction between increased charges after trial, as opposed to increased charges being brought "in the course of pretrial proceedings." Id. at 1167. The particular sequence of this proceeding did not support such a presumption.

Cases decided before Bordenkircher are not on point. Cases which do not involve plea bargaining are not on point. Defendant cites United States v. Groves, 571 F.2d 450 (9th Cir. 1978), but that decision expressly held that Bordenkircher was not applicable to its decision, because the case did not involve plea bargaining. United States v. Jenkins, 504 F.3d 604 (9th Cir. 2007), does not mention Bordenkircher, because it concerns a case where there appears to have been no plea negotiations at all.

In short, defendant's motions should be summarily denied.

RESPECTFULLY SUBMITTED this  22nd   day of April, 2008.

                                            LEONARDO M. RAPADAS
                                            United States Attorney
                                            Districts of Guam and NMI


                                    By:   /s/Karon V. Johnson
                                          KARON V. JOHNSON
                                          Assistant U.S. Attorney