**DISTRICT COURT OF GUAM**

**TERRITORY OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>IN HYUK KIM aka Dominic,<br><br>Defendant. | Criminal Case No. 07-00064<br><br>**ORDER re: Defendant's Motions:**<br>**(1) To Dismiss for Prosecutorial Vindictiveness**<br>**(2) To Suppress Statements**<br>**(3) For Discovery Pursuant to *Brady* and Rule 16** |

This matter comes before the court on a Motion to Dismiss for Prosecutorial Vindictiveness, and a Motion to Suppress Statements, and Motion for Discovery Pursuant to *Brady* and Rule 16. After careful consideration of the matter and upon review of relevant authority, the Court sets for the bases for its ruling herein.

## BACKGROUND

This case arises from an alleged conspiracy involving Defendant In Hyuk Kim ("Kim"), co-defendant Mi Kyung Bosley ("Bosley"), and others, to misrepresent immigration documents for Korean tourists entering Guam under the Guam Visa Waiver Program, which would allow the tourists to "over stay" on Guam and work in Korean-owned nightclubs, bars and lounges. *See* Docket No. 49, Superseding Indictment.

On July 25, 2007, Kim and Bosley were indicted for Conspiracy to Commit Alien Smuggling. *See* Docket No. 1, Indictment. The indictment alleged that the defendants "did unlawfully, willfully, and knowingly combine, conspire, confederate and agree with each other and with other persons both known and unknown to the Grand Jury, to commit . . . alien smuggling for

commercial advantage and financial gain in violation of Title 8 U.S.C. §§ 2 & 371." *See* Docket No. 1. No-bail arrest warrants were issued that same day. *See* Docket Nos. 4 and 5.

On July 31, 2007, Kim, who was employed by Korean Airlines as a passenger services agent, was arrested on July 31, 2007 by Immigration and Customers Enforcement (ICE) agents, pursuant to the arrest warrant. *See* Docket No. 71, Ex. A (Report of Investigation). The arrest occurred about 5:10 a.m. at the airport employee parking lot. *Id.* Kim was then brought to the ICE Office, and at 5:30 a.m., after having been advised of his rights, agreed to cooperate in the investigation, and accordingly, made oral and written statements to ICE agents Richard Flores and John Duenas regarding the alleged conspiracy. *Id.* Apparently, after Kim made these statements, the agents contacted Federal Public Defender John Gorman and advised him that Kim wanted to cooperate but was worried about the possible jail time. Docket No. 71, Motion to Suppress. Kim spoke with Mr. Gorman, and continued to cooperate with the agents. *Id.*

On August 9, 2008, a plea agreement was extended to Kim. *See* Docket 70, Ex. B.1, B.2. Defendant filed several motions on December 21, 2007, including a Motion to Dismiss Indictment for Failure to State Offense, and an In Limine Motion to Exclude 404(b) Evidence. *See* Docket Nos. 28, 31.

On March 12, 2008, a superseding indictment was filed against the Defendants, charging one count of Conspiracy to Commit Alien Smuggling, and three counts of Alien Smuggling. *See* Docket No. 49. Alien Smuggling is defined as "knowing that an alien remained in the United States in violation of law, and did unlawfully and knowingly conceal, harbor, and shield from detection, such alien." 8 U.S.C. § 1324(a)(1)(A)(iii).

## ANALYSIS

### A. MOTION TO DISMISS FOR PROSECUTORIAL VINDICTIVENESS

Kim next contends that the Superseding Indictment must be dismissed, arguing that the three new counts of Alien Smuggling listed in the Superseding Indictment were only added after and because he rejected the Government's plea offer. *See* Docket No. 70. He argues that had Kim accepted the plea offer and not filed four pre-trial motions, the United States would not have filed the Superseding Indictment. *See id.* at 1-2.

2

He relies on *United States v. Jenkins*, 504 F.3d 694 (9th Cir. 2007), contending this case is directly on point. In *Jenkins*, the defendant was apprehended twice by the authorities for alien smuggling, but was never indicted. *Id.* at 697. The defendant was later indicted on unrelated marijuana smuggling charges and went to trial. *Id.* at 698. At trial, the defendant testified in her own defense and maintained that she believed the vehicle in which she had been a passenger contained illegal aliens because she had been paid on two previous occasions to smuggle aliens. *Id.* While the jury was deliberating, the Government filed alien smuggling charges against defendant. *Id.* The court found that the prosecutor's conduct created the appearance of vindictive prosecution because the alien smuggling charges were brought only after the defendant exercised her right to testify in her marijuana smuggling trial. *Id*. at 698-99. Because the Government could have prosecuted the defendant for alien smuggling well before she presented her theory of defense at the marijuana smuggling trial, its assertion that the case against the defendant was much stronger after her in-court admission did not suffice to dispel the appearance of vindictiveness.

In order to establish a presumption of vindictiveness, "the appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights." *United States v. Gallegos-Guriel*, 681 F.2d 1164, 1169 (9th Cir. 1982) (citing *United States v. Goodwin*, 457 U.S. 368, at 373, 384 (1982)). Once the burden has been established, the Government "must show that the additional charges 'did not stem from a vindictive motive, or [were] justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness.'" *Jenkins*, 504 F.3d at 701 (quoting *Gallegos-Guriel*, 681 F.2d at 1168).

In *Jenkins*, the government argued that it rebutted the presumption because even if the evidence against the defendant had been available all along, it was stronger once the defendant testified in court, and that the defendant gave the government "no choice but to bring charges." *Id*. at 701. The Ninth Circuit disagreed with the government and held that when the defendant was arrested for marijuana smuggling, the defendant raised the issue of alien smuggling, and that the government could have brought charges then, not waited until after she testified at trial. *Id*. at 702.

*Jenkins* is distinguishable from the instant case, however, because new charges in this case were brought against Kim well before trial. Furthermore, the new charges were the result of an ongoing standard investigation after Kim failed to take the plea, not as a result of information the Government failed to use previously.

Kim asserts that the Government had more than enough evidence to prosecute on Alien Smuggling charges before Kim rejected the plea agreement, and it is only because Kim rejected the plea, that the Superseding Indictment was filed. However, Kim fails to cite the seminal Supreme Court case on this issue, *Bordenkircher v. Hayes*. 434 U.S. 357 (1978). There, the Court held that when respondent made his decision not to plead guilty, he was fully informed of the terms of the plea offer, which had the consequence of an indictment for a higher offense if respondent failed to plead guilty. *Id.* at 358-59. The charge was fully supported by the evidence, which was in prosecutor's possession at the time of the original indictment. The Court held that the prosecutor's conduct did not violate respondent's due process rights under Fourteenth Amendment. *Id.* at 365. In sum, the Court concluded that the Due Process Clause of the Fourteenth Amendment is not violated when a state prosecutor carries out a threat made during plea negotiations to have the accused reindicted on more serious charges on which he is plainly subject to prosecution if he does not plead guilty to the offense with which he was originally charged.

In its Opposition, the Government argued that the present case is most similar to *Bordenkircher*, and that after Kim rejected the plea agreement and decided to go to trial, the Government continued its investigation into the Defendant, and through the course of the investigation, found "three percipient witnesses . . . who have knowledge of his involvement." Docket No. 74 at 3. The Government reasons that had the Defendant pled guilty, the standard plea agreement would have provided a clause that the government would not prosecute the Defendant for any non-violent crimes committed in Guam or CNMI, and would have ended their investigation for the crime at that time.

The instant case is even more clear-cut than in *Bordenkircher*. Here, it was only after further investigation in preparing for trial that the Government came upon the evidence to support a Superseding Indictment. There are no allegations of threats of any kind, only the fact that a

4

Superseding Indictment was filed after the Defendant failed to plea. The facts of this case do not meet the burden of prosecutorial vindictiveness argued by the Defendant and is clearly allowed under *Bordenkircher*. Accordingly, the court hereby **DENIES** the Motion to Dismiss for Prosecutorial Vindictiveness.

### B.  MOTION TO SUPPRESS

Kim seeks to suppress the statements he made after his July 31, 2007 arrest. *See* Docket No. 17, Motion to Suppress; Docket No. 82, Defendant's Supplemental Brief. He argues the statements were made as part of plea negotiations.

Under Rule 11 of the Federal Rules of Criminal Procedure, "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed. R. Crim. P. 11(f). In turn, Rule 410 provides in relevant part:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> (1) a plea of guilty which was later withdrawn;
>
> (2) a plea of nolo contendere;
>
> (3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or
>
> (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

Fed. R. Evid. 410. First, Defendant asserts that suppression is required because statements he made before his attorney arrived were "cooperation proffers made toward negotiation" of his case and thus, under Rule 11, they are inadmissible at trial. Docket No. 71. In short, he argues that his statements to agents were made as part of plea negotiations and must be suppressed.

Rule 11 provides that admissibility is determined by Rule 410. The Ninth Circuit has stated that subsection (4) of Rule 410 "extend[s] only to discussions with a prosecutor rather than with law enforcement agents." *United States v. Sitton*, 968 F.2d (9th Cir. 1992). In the case at bar, it is undisputed that there was no prosecutor present when Kim made the statements immediately after his July 31, 2007 arrest, and that he had made his statements only to the law enforcement

5

agents. Kim argues the fact that the U.S. Attorney's Office had been "apprised" of the arrest is somehow the equivalent to the prosecutor's actual presence. He cites no authority for this interpretation, and the court declines to give such an expansive reading of *Sitton*, which clearly states that for discussions to be considered Rule 11 plea negotiations, a prosecutor must be present. Accordingly, pursuant to *Sitton*, the oral and written statements made to the law enforcement agents were not "made in the course of plea discussions with an attorney for the prosecuting authority" and thus, are admissible.

Moreover, the court recognizes that the Ninth Circuit has adopted a two-tiered test for determining whether statements made by a criminal defendant is made in the course of plea negotiations. *United States v. Pantohan*, 602 F.2d 855, 857 (9th Cir. 1979). Under this test, the court must determine "first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances." *Id.* (quoting *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978) (en banc)). *See also United States v. Leon Guerrero*, 847 F.2d 1363, 1367 (9th Cir. 1988) (reiterating the two-part test adopted in *Pantohan*).

Kim cannot satisfy either prong of this two-tiered test. First, Kim fails to show that he "exhibited an actual subjective expectation to negotiate a plea at the time of the discussion" when he spoke with the agents after his arrest. *Pantohan*, 602 F.2d at 857. Kim did not offer any testimony regarding his subjective beliefs and expectations. He offers only his Declaration that he "cooperated" based on the agents promises. *See* Docket No. 29. He asks the court to "put together" his beliefs and the agents' statements to him, as recorded in his December 20, 2007 Declaration. *See* Docket No. 29, Motion to Suppress Statement for Miranda Violations.[1] Nothing

---

[1] The Declaration Kim relies upon as revealing his subjective beliefs states in relevant part:

8. The officers then promised me that if I cooperated and answered questions, I would be released, as though nothing happended [sic].

9. Based upon the promises given to me by the officers I cooperated and answered their questions.

10. After being orally interviewed and answering the officers' questions, the officers told me to put my statements in writing, and reminded me that if I cooperated, that I would be released and that my arrest would be sealed.

6

in the Declaration reveals his subjective expectation, as required by the first prong of the *Pantohan* test. Furthermore, the court finds it would be error to "put together" the agents statements in order to interpret Kim's "actual subjective expectation."

Second, even assuming *arguendo* that Kim had an expectation to negotiate plea, this expectation was objectively unreasonable under the totality of the circumstances. There was no U.S. Attorney present when Defendant made these statements, and Kim spoke only to agents shortly after his arrest. *See* Docket No. 71, Ex. A (Affidavit). Moreover, Kim made these statements before he spoke to his attorney. Under the "totality of the objective circumstances," it would not be reasonable for Defendant to believe he was in plea negotiations.

Accordingly, the court hereby **DENIES** the Motion to Suppress.

C. **MOTION TO DISCLOSE STATEMENTS PURSUANT TO *BRADY* AND RULE 16**

Kim next asserts that the court should be ordered to disclose statements he made to ICE agents after he spoke to Mr. Gorman, relying on *Brady v. Maryland*, 373 U.S. 83 (1963) and Rule 16 of the Federal Rules of Criminal Procedure. Docket No. 82. He maintains that disclosure is required "to ensure that the government does not attempt, inadvertently or otherwise, to introduce them during any trial of this matter." Docket No. 86.

Rule 16 (a)(1)(A) states in relevant part: "Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent *if the government intends to use the statement at trial*." Fed. R. Crim. P. 16 (a)(1)(A) (emphasis added). The Government has stated that it does not intend to use these oral statements: "None of the statements defendant made during his later interviews with ICE are going to be used by the government, ever." Docket No. 84. Accordingly, these oral statements are not admissible under Rule 16(a)(1)(A).

However, Rule 16(a)(1)(B) states, as to a defendant's written or recorded statement:

> Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

---

11. Based upon the officers' promises, I signed the Statement of Rights Form . . . and prepared the written statement . . . .

Docket No. 29.

1  (i) any relevant written or recorded statement by the defendant if:

2  the statement is within the government's possession, custody, or control; and

3  the attorney for the government knows -- or through due diligence could know -- that the statement exists . . . .

This provision is not limited to the government's use during trial. Thus, pursuant to Rule 16(a)(1)(B), the government must make available to Kim any written or recorded statements, for his inspection, copying or photographing. However, Kim and his attorney(s) are prohibited from disclosing to any person or entity, without court approval, any information regarding any ongoing investigation. This court wants to ensure that ongoing investigations are not jeopardized.

There being no further motions pending before the court, the trial in this case shall commence on September 30, 2008 at 9:30 a.m. All pre-trial documents shall be filed no later than September 19, 2008.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Sep 12, 2008**