**DISTRICT COURT OF GUAM**

**TERRITORY OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 07-00064 |
| Plaintiff, | |
| vs. | **OPINION and ORDER re: Defendant's Motion to Reconsider Denial of Motion to Dismiss** |
| IN HYUK KIM aka Dominic, | |
| Defendant. | |

This matter comes before the court on the Defendant In Hyuk Kim's Motion to Reconsider Denial of Motion to Dismiss. *See* Docket No. 94. After hearings on the motion and additional briefing, and upon careful consideration of the matter and review of relevant authority, the court hereby **GRANTS** the Motion to Reconsider and hereby **DISMISSES** the Superseding Indictment.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from an alleged conspiracy involving the Defendant In Hyuk Kim ("the Defendant"), co-defendant Mi Kyung Bosley ("Bosley"),[1] and others, accused of misrepresenting immigration documents for Korean tourists entering Guam under the Guam Visa Waiver Program. Under this program, a Korean national is authorized to enter Guam for a limited period of 15 days only as a tourist, with no employment allowed. Upon arrival, a Korean tourist is required to execute a form – the I-94 Arrival/Departure Record ("I-94"). In short, the I-94 records the entry and departure dates of the tourist. If the Korean tourist fails to leave Guam after 15 days, he or she is in violation of federal immigration law.

---

[1] An arrest warrant for co-defendant Mi Kyung Bosley remains pending. *See* Docket No. 51.

On July 25, 2007, the Defendant and Bosley were indicted for Conspiracy to Commit Alien Smuggling. *See* Docket No. 1, Indictment. The Indictment alleged that the defendants "did unlawfully, willfully, and knowingly combine, conspire, confederate and agree with each other and with other persons both known and unknown to the Grand Jury, to commit . . . alien smuggling for commercial advantage and financial gain in violation of Title 8, U.S.C. § 1324(a)(1)(A)(iii), and did commit overt acts in furtherance of said conspiracy and to achieve the object thereof . . . ." *See* Docket No. 1.

On August 9, 2007, a plea agreement was extended to the Defendant. *See* Docket 70, Exhs. B.1 and B.2. The Defendant apparently did not accept the plea and on December 21, 2007, he filed several motions – a Motion to Dismiss Indictment for Failure to State Offense, a Motion to Suppress Statement, a Motion to Suppress, and an *In Limine* Motion to Exclude 404(b) Evidence. *See* Docket Nos. 28, 29, 30 and 31. On March 27, 2008, the court denied these motions. *See* Docket No. 59.

On March 12, 2008, a Superseding Indictment was filed against the Defendant and Bosley, charging again the one count of Conspiracy to Commit Alien Smuggling, and adding three counts of Alien Smuggling. *See* Docket No. 49. Specifically, the United States Attorney ("the Prosecutor") alleged that the Defendant was paid to file I-94 forms in order to make it appear that the nationals had departed Guam. This would allow the tourists to "over stay" on Guam and work in Korean-owned nightclubs, bars and lounges. *See* Docket No. 49, Superseding Indictment.

On April 18, 2008, the Defendant filed a Motion to Dismiss Superseding Indictment for Prosecutorial Vindictiveness, arguing that it should be dismissed because it was filed to penalize him for exercising his rights to reject the plea offer and to file pretrial motions. *See* Docket No. 70. The Defendant argued that there was a presumption of prosecutorial vindictiveness. *Id.*

On May 15, 2008, the court held a hearing on this motion and subsequently denied it on September 12, 2008. *See* Docket Nos. 79 and 91. Defendant then sought reconsideration, arguing that when the court denied the motion, it failed to address the second ground

2

supporting the motion (the Prosecutor penalizing Defendant for filing pretrial motions).  *See* Docket No. 94.

On November 25, 2008, the court held a hearing on the Defendant's reconsideration motion.  *See* Docket No. 106.  Counsel for the Defendant argued the existence of "actual vindictiveness" or at the very least a strong presumption of such, in light of the statements made by the Assistant United States Attorney ("the Prosecutor") during the May 15, 2008 hearing.  *See* Docket No. 109, p.6.  The Defendant asserted that certain of the Prosecutor's statements demonstrated that additional charges were indeed brought forth in the Superseding Indictment because the Defendant exercised his right to file pretrial motions.  Specifically, the Defendant points to the following statements the Prosecutor made during the May 15, 2008 hearing:

> No, <u>it was the filing of his motions that made this government determine to bring everything that it could to bear on the trial.</u>
>
> . . .
>
> <u>You file motions in this court, and we start looking for more charges to bring.</u>
>
> . . .
>
> <u>But as a result of his filing motions, we began an investigation to see if there were other charges that should and could be brought.</u>
>
> In theory, we could have gone ahead and tried this one [against the Defendant], which involved just the undercover sting operation, and then brought a separate charge concerning Ms. An and then two more separate indictments for separate trial dates concerning the other two aliens . . . . But if we're going to trial on this issue, we're not going to break this down into four trials because that would be a huge burden on the court's resources, so we bring everything that we have that we believe is provable in the superseding indictment.  <u>But unquestionably, we are punishing him for filing those motions, and that's the truth.</u>

Docket No. 99, pp. 24, 27-28 (emphasis added).  The Defendant seemed to argue that the Prosecutor's statements constituted "new evidence" and thus reconsideration was proper.

During the November 25, 2008 hearing on the motion for reconsideration, the Prosecutor argued that the statements in question were a paraphrasing of the United States Supreme Court case of *Bordenkircher v. Hayes*, 434 U.S. 357 (1978).  *See* Docket No. 109, pp.

3

41-42. In *Bordenkircher*, the Court held that if a defendant rejects a plea offer, it was constitutional for a prosecutor to carry out a threat to reindict a defendant on more serious charges. In the instant case, the Prosecutor explained that she was simply following *Bordenkircher*. When the Defendant rejected the plea agreement, it meant that he was going to trial. *See* Docket No. 109, p. 47. In short, she argued they were no longer in plea negotiations and she was free to investigate whether additional charges could be brought.

According to the prosecutor's time line, she contacted defense counsel on October 31, 2007. Counsel indicated that he was unsure if they were going to trial. *Id.* at pp. 46-47. Then, in December 21, 2007 and December 26, 2007, the Defendant filed several motions, which the Prosecutor interpreted as a rejection of the plea offer. *Id.* at p. 47. To show the nonexistence of vindictiveness on behalf of the Government, the Prosecutor pointed out that no new charges were brought at that time. "[W]e did not bring a superseding indictment because there were no new charges at that point." *Id.* at p. 47.

Agent Richard Flores ("Agent Flores") of Immigration and Customs Enforcement testified at the November 25, 2008 hearing. Agent Flores testified, *inter alia*, that he did not intend to continue investigating the Defendant while the plea offer was pending. Docket No. 109, p. 82. However, because the co-defendant Bosley had not been apprehended, the overall investigation of the conspiracy continued. Agent Flores testified that he was actively trying to find and identify tourists involved in the I-94 scam. *Id.* at pp. 64 and 81. It was during the course of investigating these Korean nationals that he discovered further information about the Defendant, which led to the additional charges being brought against the Defendant in the Superseding Indictment.

In order to give context to her statements, the Prosecutor suggested that the court continue the hearing so she could make arrangements with her office in preparing another attorney who in turn could question her during the continued hearing. *See* Docket No. 109, pp. 86-87. The Prosecutor stated that she would notify the court as to a proposed hearing date. However, rather than submitting a proposed hearing date, the Prosecutor filed a supplemental memorandum and several exhibits on December 12, 2008. *See* Docket No. 113. The

4

memorandum reiterated the same arguments she made at the November 25, 2008 hearing. *Id.* Additionally, the Prosecutor argued that there was no prosecutorial vindictiveness because the Superseding Indictment did not result in harsher charges. *Id.*

On January 20, 2009, the Defendant objected to the memorandum and sought to strike it. *See* Docket No. 114. The Defendant argued that under Rule 49 of the Federal Rules of Criminal Procedure and Local Rule 7.1(d)(1)(A), the memorandum should have been served fourteen days before the hearing. *See* Docket No. 114. The Defendant contends the court should not consider the supplemental memorandum pursuant to Local Rule 7.1(f). *Id.*

A continued hearing on the motion to reconsider and a hearing on the motion to strike were held on August 13, 2009 and October 7, 2009. *See* Docket Nos. 116 and 121. The court subsequently denied the motion to strike and ordered the Defendant to respond to the substantive issues raised in the Government's memorandum and declaration. *See* Docket No. 122. The Defendant filed a timely response, and the Government timely filed its reply. *See* Docket Nos. 127 and 130.

## II. DISCUSSION

### A. The Motion for Reconsideration

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Nunes v. Ashcroft*, 375 F.3d 805, 807-808 (9th Cir. 2004) (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993), *cert. denied*, 512 U.S. 1236 (1994)). The Defendant urges the court to reconsider its denial to dismiss for prosecutorial vindictiveness. Specifically, he argues that the court's order denying the motion to dismiss apparently did not consider the vindictiveness in the Prosecutor's statements made during the May 15, 2008 hearing. *See* Docket No. 94.

### B. Vindictive Prosecution

"To establish a *prima facie* case of prosecutorial vindictiveness, a defendant must show either direct evidence of actual vindictiveness or facts that warrant an appearance of such." *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 441 (9th Cir. 2007) (quoting *United States v.*

*Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995) (internal quotation marks and citation omitted)).

As explained by the Ninth Circuit:

> [A defendant] may establish prosecutorial vindictiveness by producing direct evidence of the prosecutor's punitive motivation towards [him or] her. Alternatively, [he or she] she is entitled to a presumption of vindictiveness if [he or] she can show that the [additional] charges "were filed because [he or she] exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness."

*United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007) (quoting *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982)).

### 1. Actual vindictiveness

A defendant may rely on "direct evidence of actual vindictiveness." *United States v. Lopez*, 474 F.3d 1208, 1211 (9th Cir. 2006) (quoting *United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995). "A finding of actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in a rare case.'" *United States v. v. Johnson*, 171 F.3d 139, 140-41 (2d Cir. 1999) (quoting *United States v. Goodwin*, 457 U.S. 368, 380-81 & nn. 12-13, 384 & n. 19 (1982)); *King*, 126 F.3d at 397). To support a finding of prosecutorial vindictiveness, the United States Supreme Court has suggested that "a defendant might prove through objective evidence an improper prosecutorial motive." *United States v. Goodwin*, 457 U.S. 368, 380 n.12 (1982).

### 2. Presumption of vindictiveness

Alternatively, a defendant may assert the existence of vindictive prosecution by relying on "facts that warrant an appearance of such" vindictiveness. *Nunes*, 485 F.3d at 441. As the Ninth Circuit explained, if the defendant provides "[e]vidence indicating a realistic or reasonable likelihood of vindictiveness" this "may give rise to a presumption of vindictiveness on the government's part." *United States v. Garza-Juarez*, 992 F.2d 896, 906 (9th Cir. 1993). In the majority of the cases discussing prosecutorial vindictiveness, additional charges were brought when the defendant refused to accept a plea bargain or filed pre-trial motions. *See, e.g.*, *United States v. Noushfar*, 78 F.3d 1442 (9th Cir. 1996) (arguing additional charges were brought because defendants refused to plead guilty and filed a motion to suppress); *Gallegos-*

6

1 | *Curiel*, 681 F.2d 1164 (arguing that the felony indictment was filed because the defendant
2 | pleaded not guilty to the initial misdemeanor charge); *United States v. Heldt*, 745 F.2d 1275,
3 | 1280 (9th Cir. 1984) (arguing that a "superseding indictment [was filed] in retaliation for [the
4 | defendant's] refusal to agree to a plea bargain").

If a defendant is able to establish a presumption of vindictiveness, the burden then shifts to the prosecution to show that "'independent reasons or intervening circumstances dispel the appearance of vindictiveness and justify its decisions.'" *Montoya*, 45 F.3d at 1299 (quoting *United States v. Hooton*, 662 F.2d 628, 634 (9th Cir. 1981)).

### 3. The Prosecutor's statements

The Defendant argues that a review of the Prosecutor's statements made during the May 15, 2008 hearing prove that there was actual vindictive prosecution in the case at bar. As noted above, the Prosecutor made the following statements during the May 15, 2008 hearing:

> "[I]t was the filing of his motions that made this government determine to bring everything that it could to bear on the trial."
>
> "You file motions in this court, and we start looking for more charges to bring."
>
> "[A]s a result of his filing motions, we began an investigation to see if there were other charges that should and could be brought."
>
> "[U]nquestionably, we are punishing him for filing those motions, and that's the truth."

Docket No. 99, pp. 24, 27-28.

As discussed previously, the Prosecutor asserts she was only following the Supreme Court's holding in *Bordenkircher*. *Bordenkircher* held that a prosecutor is permitted to carry out a threat, made during plea negotiations, to have a defendant re-indicted on more serious charges if he or she rejected a plea offer and goes to trial. The Court reasoned that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id.* at 363. A prosecutor is free to "openly present[] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he [is] plainly subject to prosecution." *Id.* at 365. Furthermore, it has been concluded by the Ninth Circuit that it does not offend due process for a prosecutor to
///

threaten a defendant that his refusal to enter a guilty plea could lead to additional charges. *Garza-Juarez*, 992 F.2d 896.

The Prosecutor would like this court to equate her May 15, 2008 statements of "filing motions" with the words that the Defendant was "going to trial" – which the Prosecutor asserts is permissible under *Bordenkircher*. This interpretation was raised in her filings, (*see* Docket Nos. 104 and 113), as well as in court. The Prosecutor stated during the May 15, 2008 hearing, that "[f]iling motions equals going to trial. One does not file motions unless they're going to trial. . . So filing motions and going to trial are considered the same thing." Docket No. 99, p. 35-36. The Prosecutor then stated during the October 7, 2009 hearing: "The point is, is that I use the words interchangeably. Because it's a shorthand for 'We're going to go to trial.'" Presumably the Prosecutor is arguing that if she believes the "defendant is going to trial" by filing motions, she is free to bring additional charges under *Bordenkircher*.

The court may have been persuaded by the Prosecutor's argument had she limited her statements to those suggesting that if "[y]ou file motions [i.e. going to trial] in this court, . . . we start looking for more charges to bring." Docket No. 99, p. 24. However, the statements made were not so limited and run far afoul of what is permissible under *Bordenkircher*. In reference to filing the Superseding Indictment, the Prosecutor openly stated, "**unquestionably, we are punishing him for filing those motions, and that's the truth**." Docket No. 99, p. 28 (emphasis added).

The Prosecutor "flatly disputes that vindictiveness was involved at all" in this case, and maintains that "[t]here is no distinction between the 'appearance of vindictiveness' and 'actual vindictiveness' for purposes of applying this doctrine." Docket No. 130. The Prosecutor argues that the doctrine is triggered when charges of increased severity are filed, or when the possibility of a greater sentence is imposed, against a defendant. *See* Docket Nos. 113 and 130. And since the additional charges were not more severe than the original count and would not subject the Defendant to a greater sentence, there is no vindictiveness, presumed or actual. *Id.*

///

///

8

Contrary to the Government's assertion, both the Supreme Court and the Ninth Circuit have made a distinction between "actual" and the "appearance" of vindictiveness.[2] In *Goodwin*, the Supreme Court stated: "In declining to apply a presumption of vindictiveness, we of course do not foreclose the possibility that an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish [the defendant] for doing something that the law plainly allowed him to do." 457 U.S. at 384. In addition, the Ninth Circuit has stated:

> Absent direct evidence of an expressed hostility or threat to the defendant for having exercised a constitutional right, to establish a claim of vindictive prosecution the defendant must make an initial showing that charges of increased severity were filed because the accused exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness.

*Gallegos-Curiel*, 681 F.2d at 1168 (citations omitted).[3] Again, a distinction is drawn between cases where there is "direct evidence of an express hostility" and cases where a defendant "must make an initial showing that charges of increased severity were filed because the accused exercised a . . . right in circumstances that give rise to an appearance of vindictiveness." *Id.*

Based on Ninth Circuit authority, this court concludes that governmental action that increases the severity of the charge or sentence is relevant when the court is faced with a case of presumptive – not actual – prosecutorial vindictiveness.[4] The case before the court is one of

---

[2] The Defendant pointed out in his briefing that the Prosecutor relies on "presumed vindictiveness cases which are distinguishable from the instant case, an actual vindictiveness case." Docket No. 127. The court notes that cases cited by the Prosecutor were indeed cases wherein the defendants had argued there was a presumption of vindictiveness because the prosecutor had filed additional charges that were more severe. *See* Docket No. 113. In light of the analysis herein, this court agrees that the cases relied upon by the Prosecutor are distinguishable.

[3] In arguing its interpretation that new charges or a greater sentence are a necessary predicate of prosecutorial vindictiveness, the Prosecutor omits the first clause of this quotation which expressly refers to the alternative method of finding prosecutorial vindictiveness; that is, "direct evidence of an express hostility." *See* Docket No. 113.

[4] Therefore, it is not necessary to address the arguments made by the parties as to the increased severity of the charges and sentence. *See* Docket Nos. 113, 127, 130.

9

actual prosecutorial vindictiveness, arising from the statements made by the Prosecutor in court.

Even if this court agreed with the Prosecutor that there is no distinction between cases of presumptive vindictiveness with those of actual vindictiveness, the court would still find the Government failed to meet its burden. The Prosecutor first argued in her brief that she was simply inartful in the choice of her words (*see* Docket No. 113, Exh.1, p.4); however, later at the hearing she disavowed that she had even made any statement suggesting that she was seeking to punish the Defendant. During the October 7, 2009 hearing,[5] the court queried whether it was proper for a prosecutor to say that a defendant was being punished for filing a motion.

> The Court: But can you tell a defendant, defense counsel, that you are punishing the defendant for filing motions by bringing additional charges? Can you say that? Do you think a prosecutor is allowed to say that?
>
> Prosecutor: I've never – I've never – I don't – We don't practice that. It never would have crossed my mind.
>
> The Court: . . . But you said it!
>
> Prosecutor: But that's not what I said.
>
> The Court: That's what you said. I'm reading it. It's in black and white.
>
> Prosecutor: You know, you know, I did not mean that. Because this guy was going to go to trial and he was filing motions in the context of going to go to trial. Therefore, we were looking for more motions[6] to bring. . . .

After a thorough review of the caselaw, this court recognizes that it is very rare for a court to make a finding of actual vindictive prosecution. Even the Supreme Court opined that such a case would rarely occur. The Court in *Goodwin* stated: "It is unrealistic to assume that

---

[5] This hearing has not been transcribed in writing. Accordingly, the court reviewed the court recording of the proceeding and, in part, memorializes it herein.

[6] Despite the Prosecutor's reference to "motions," it seems clear that she intended to say "charges."

10

a prosecutor's probable response to such motions is to seek to penalize and to deter." 457 U.S. at 381. Despite the Supreme Court's doubt that such a situation could arise, the Prosecutor here specifically expressed her unquestionable intent to punish the Defendant for filing motions, and based on her words, this court would be hard-pressed to reach a contrary conclusion. It is clear that the Prosecutor's words constitute objective and direct evidence of actual prosecutorial vindictiveness, and thus, a violation of the Defendant's due process rights. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" *Bordenkircher*, 434 U.S. at 363 (citation omitted).

An Oregon trial judge in *State v. Halling*, 672 P.2d 1386 (Or. App. 1983) faced a situation similar to the one here. In *Halling,* a deputy district attorney called defense counsel and said: "Larry, I have a brilliant idea. I have just thought of a way to cause further evil to poor Mr. Halling." *Id.* at 1387. The prosecutor then said that "she intended to charge the defendant with additional crimes unless he accepted her previous [plea] offer." *Id.* After making that comment, the prosecutor then filed two additional indictments against Mr. Halling. The trial judge dismissed the two indictments for prosecutorial vindictiveness, and the Oregon Court of Appeals affirmed. Finding the dismissal was proper, the appellate court stated:

> As previously noted, the trial judge found that the additional charges against defendant were brought in "reprisal" for defendant's rejection of a plea bargain. We agree with defendant that that is tantamount to a finding that "the prosecutor's charging decision was motivated by a desire to punish" defendant for insisting on a jury trial.

*Id.* at 1388.

Again, this court recognizes that "'retaliatory motivation' may be difficult to prove in any individual case." *Michigan v. Payne*, 412 U.S. 47, 55 n.9 (1973) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 725 n.20 (1969)). Indeed, the Ninth Circuit has stated: "It is only when prosecutorial actions stem from an animus toward the exercise of a defendant's rights that vindictive prosecution exists." *Gallegos-Curiel*, 681 F.2d at 1169.

The case before the court is that rare case where there is an expressed "animus toward the exercise of a defendant's rights." *Id.* The animus is evident in the Prosecutor's separate statements, which, taken as a whole, evince a "retaliatory motivation" and lead this court to the inescapable conclusion that there was a deliberate intent to punish the Defendant for filing motions. Without a doubt, it is impossible to argue otherwise. It cannot be questioned that there was governmental action to penalize the Defendant. The Prosecutor here declared that "unquestionably, we are punishing him for filing these motions, and that's the truth." Docket No. 99, p. 28. The court believes the Prosecutor – that that is the truth. Accordingly, the court finds that the Defendant's due process rights were violated.

**C. Remedy for violation of due process rights**

The Defendant asserts that only dismissal of the entire case would remedy the due process violation that resulted from the prosecutorial vindictiveness. *See* Docket No. 118. He further argues that dismissal of only the Superseding Indictment would allow the Prosecutor to proceed under the original indictment, which in essence, offers him no remedy at all.

The Prosecutor on the other hand, contends that dismissal of the Superseding Indictment requires the court to proceed to trial on the original indictment. Moreover, the Prosecutor argues that even if dismissal were granted, it should be granted without prejudice. The Prosecutor insists that there was no due process, constitutional or statutory violation to warrant dismissal with prejudice. *See* Docket No. 119.

"A district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. If the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991) (citation omitted). The Defendant contends that dismissal is appropriate under either theory.

"To violate due process, governmental conduct must be 'so grossly shocking and so outrageous as to violate the universal sense of justice.' Due process is not violated unless the conduct is attributable to and directed by the government." *Id.* at 1092 (quoting *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991)). The standard in *Barrera-Moreno* is met here.

12

The due process violation is certainly "attributable to and directed by the government" because the statements were made by the Prosecutor representing the Government. Furthermore, it is troubling that an agent of the Government would state that "unquestionably, we are punishing [a defendant] for filing those motions, and that's the truth." Docket No. 99, p. 28. As noted above, the Supreme Court in *Goodwin* doubted that such a situation could occur. Nevertheless, it occurred in this case, and such conduct cannot be interpreted as anything short of outrageous.

The court finds that Defendant's due process rights were violated because of the retaliatory motive behind the filing of the Superseding Indictment.[7] Accordingly, the court concludes that dismissal of the Superseding Indictment is the appropriate remedy. This decision is not made lightly. The court is well-aware that "in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *United States. v. Armstrong*, 517 U.S. 456, 465 (1996) (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14-15 (1926)).

In support of his argument for dismissal of the entire case, the Defendant cites *United States v. Ruesga-Martinez*, 534 F.2d 1367, 1369 (9th Cir. 1976) where the Ninth Circuit dismissed the indictment. In *Ruesga-Martinez*, the court found that after filing a complaint on a misdemeanor, the government then charged the defendant with a two-count felony indictment because the defendant had refused to sign a waiver of his right to be tried by a district judge and the right that he might have had to a jury trial. Finding that the government was unable to refute the presumption of vindictiveness, the Ninth Circuit dismissed the indictment.

Unlike *Ruesga-Martinez*, there is both an original indictment and a superseding indictment pending here. There has been no showing that as to the original indictment there was any due process violation of the Defendant's rights. "An original indictment remains pending until it is dismissed or until double jeopardy or due process would forbid prosecution

---

[7] In light of the court's finding that there was a due process violation, it is not necessary to consider whether dismissal is appropriate under the court's supervisory powers." *See United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991).

13

under it." *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990). This ruling was recently reiterated in *United States v. Hickey*, 580 F.2d 922 (9th Cir. 2009), where the court held that "multiple indictments may simultaneously be pending against the same defendant in the same case." *Id.* at 929 (citing *United States v. Holm*, 550 F.2d 568, 569 (9th Cir. 1977)). Therefore, "[b]ecause all of the indictments against a defendant remain pending unless formally dismissed (at least until jeopardy attaches), the statute of limitations remains tolled for all of the charges in prior indictments, even if subsequent indictments omit those charges." *Id.* at 930.

In this case, the Prosecutor has never dismissed the original indictment. Jeopardy has not attached, and due process would not forbid prosecution under the original indictment. The court finds that dismissal of the Superseding Indictment strikes the right balance between protecting the Defendant's ability to exercise his constitutional rights with the Government's mandate to aggressively prosecute crimes within the confines of the law.

### III. CONCLUSION

The court finds that, taken cumulatively, the May 15, 2008 statements made by the Prosecutor, including her assertion that "unquestionably, we are punishing him for filing these motions," (Docket No. 99, p. 28), are direct evidence of actual vindictiveness. *See Lopez*, 474 F.2d at 1211. The statements constitute "a due process violation of the most basic sort" because they demonstrate that the "an agent of the State . . . pursue[d] a course of action whose objective is to penalize a person's reliance on his legal rights. *Bordenkircher*, 434 U.S. at 363. These statements describe actual prosecutorial vindictiveness that was "patently unconstitutional," *id.*, and a violation of the Defendant's due process rights. Accordingly, the court grants reconsideration, and hereby dismisses the Superseding Indictment. Accordingly, the court sets this matter for a status hearing on December 14, 2009 at 10:30 a.m. At that time, the court will set this matter for trial; therefore, the parties should meet and confer as to a possible trial date on the original indictment before the status hearing.

**SO ORDERED.**

/s/ **Frances M. Tydingco-Gatewood**
   **Chief Judge**
   **Dated: Dec 08, 2009**